## PRINCE v. DUKE UNIVERSITY

[326 N.C. 787 (1990)]

———————————

CECILE M. PRINCE, ADMINISTRATRIX FOR THE ESTATE OF RONALD DAVID PRINCE, DECEASED, PLAINTIFF v. DUKE UNIVERSITY, A CORPORATION, D/B/A DUKE UNIVERSITY MEDICAL CENTER AND/OR "DUKE HOSPITAL," DEFENDANT

No. 493PA89

(Filed 13 June 1990)

1. **Rules of Civil Procedure § 33 (NCI3d) — medical malpractice — list of expert witnesses — neuropathologist as treating physician**

Plaintiff in a medical malpractice action was granted a new trial where plaintiff had served defendant hospital with interrogatories calling for a list of all expert witnesses whom defendant intended to call at trial; defendant provided the names of certain experts and subsequently amended its response to note that some of decedent's treating physicians might be called to testify concerning the course of treatment of the decedent; plaintiff did not request nor did defendant list the treating physicians; defendant called at trial a neuropathologist who testified as to his review of the frozen slides of decedent's brain and rendered his opinion as to the cause of death; and, although defendant considered the neuropathologist to be a treating physician, he never saw the decedent alive and had

nothing to do with the treatment of decedent. Defendant's supplement to its interrogatory responses noting that various treating physicians might be called to testify at trial was thus an insufficient identification of the neuropathologist.

**Am Jur 2d, Depositions and Discovery § 70.**

2. **Evidence § 14 (NCI3d) — physician patient privilege — name, address and telephone number of hospital roommate**

The trial court erred in a medical malpractice action by not compelling defendant to produce identification data for the patient sharing a room with the deceased during his last hospitalization. Although defendant hospital objected to plaintiff's interrogatory on the ground that the information was privileged and confidential by virtue of the health care provider-patient privilege, that privilege has generally been construed by the North Carolina Supreme Court to extend only to the clinical portions of hospital medical records.

**Am Jur 2d, Depositions and Discovery § 29.**

ON appeal by plaintiff of a judgment entered on 19 June 1989 by *Hudson, J.,* at the 5 June 1989 Civil Session (Jury), Superior Court, WAKE County. This Court *ex mero motu,* pursuant to N.C.G.S. § 7A-31(a) and Rule 15(e)(2) of the North Carolina Rules of Appellate Procedure, ordered the appeal heard by it prior to a determination by the Court of Appeals. Heard in the Supreme Court 10 April 1990.

*David H. Rogers for plaintiff-appellant.*

*Yates, Fleishman, McLamb & Weyher, by Bruce W. Berger and Jean Walker Tucker, for the defendant-appellee.*

MARTIN, Justice.

Plaintiff brought this medical malpractice action against defendant hospital seeking damages for the wrongful death of Ronald David Prince as a result of defendant's negligent acts or omissions. Briefly, the facts show that Mr. Prince was an extremely obese twenty-seven-year-old man who had for several years sought medical assistance in his efforts to lose weight. In January 1980, he was admitted into Duke Hospital and underwent a surgical procedure, gastric plication or "stomach stapling." He was again admitted to Duke Hospital in March of 1980 for tests and on 17 April 1980

further surgery was performed to reverse the stapling procedure. Antibiotics were prescribed to ward off infection. Recovery was slow but uneventful until 25 April 1980. On that day, the patient was noted to have rapid pulse and respiration rates although his body temperature and white blood count were normal. At approximately 4:00 p.m. on the same day, his blood pressure dropped and his heart rate increased. Shortly thereafter, Mr. Prince vomited and apparently aspirated, leading to respiratory and cardiac arrest. After cardiopulmonary resuscitation, Mr. Prince regained cardiac function and was moved to the Intensive Care Unit (ICU). Once there, he again experienced cardiac arrest and, this time, hospital personnel were unable to revive him. He was pronounced dead at 7:55 p.m. An autopsy was performed and the report listed Wernicke's encephalopathy as the cause of death. The autopsy report also noted that Mr. Prince had a clinical history of sepsis and shock.

The complaint was filed by Mr. Prince's wife, Cecile M. Prince, on 26 April 1982 alleging that defendant's negligence in the treatment and diagnosis of her husband proximately caused his death on 25 April 1980. Plaintiff took a voluntary dismissal on 31 August 1984 and refiled her suit on 27 August 1985. Duke Hospital filed an answer on 30 September 1985 and, following extensive discovery, the trial began on 5 June 1989. After approximately two weeks of hearing evidence and arguments, the jury returned a verdict in favor of defendant, Duke Hospital. Plaintiff filed a notice of appeal to the Court of Appeals on 21 June 1989, and this Court granted discretionary review *ex mero motu* prior to a determination by the lower appellate court.

[1] We first address plaintiff's contention that the trial court erred in allowing Dr. F. Stephen Vogel, a neuropathologist at Duke Hospital, to testify at trial. On 5 June 1987, plaintiff served Duke Hospital with interrogatories asking in No. 17 for a listing of all expert witnesses whom defendant intended to call to testify on its behalf at trial. Duke Hospital timely responded on 7 July 1987. At that time the only expert named by Duke was Dr. William P.J. Peete. In keeping with Rule 26(e)(1) of the North Carolina Rules of Civil Procedure, defendant seasonably supplemented its answers to plaintiff's first interrogatories and added Dr. Walter Pories and Dr. Frances Eason to its list of experts. Later, Duke Hospital again amended its earlier response on 18 May 1988 and noted that some of decedent's treating physicians may be called to testify concerning the course of treatment of Mr. Prince and

were therefore to be denominated as expert witnesses. Plaintiff did not request nor did defendant list the treating physicians. At the trial which began on 5 June 1989, Duke Hospital called Dr. Stephen Vogel to testify. He was subsequently qualified as an expert in the field of neuropathology and testified as to his review of the frozen slides of Mr. Prince's brain. He was then allowed to render his opinion as to the cause of death of Ronnie Prince.

It is plaintiff's contention that, since Dr. Vogel was not listed as an expert witness, plaintiff was prejudiced by her inability to depose Dr. Vogel prior to trial and therefore to adequately prepare for his cross-examination. Defendant considered Dr. Vogel to be a "fact" witness who participated in Mr. Prince's autopsy and who testified concerning his participation in the medical case of Mr. Prince. Since Duke considered Dr. Vogel to be a treating physician, he was not listed as an expert witness. We have previously held that "[w]here a doctor is or was the plaintiff's treating physician and is called to testify not about the standard of the plaintiff's care but rather about the plaintiff's treatment . . . he is not an expert witness." *Turner v. Duke University*, 325 N.C. 152, 168, 381 S.E.2d 706, 716 (1989). There is nothing in the record to indicate that defendant failed in good faith to supplement its responses to discovery requests regarding the identity of its expert witnesses.

The problem lies in defendant's considering Dr. Vogel as a treating physician. The medical definition of treatment is "the management and care of a patient for the purpose of combating disease or disorder." Dorland's Illustrated Medical Dictionary 1388 (rev. 26th ed. 1985). Even given its broadest definition, treatment is defined as "the steps taken to effect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." Black's Law Dictionary 1346 (rev. 5th ed. 1979). Once the patient is dead, the battle is over. Treatment has ceased.

Dr. Vogel never saw Mr. Prince alive. He was merely shown some frozen slides of Mr. Prince's brain and asked to render an opinion as to the cause of death. Dr. Vogel had nothing to do with the treatment of Mr. Prince; therefore, he was not a treating physician. Defendant's second supplement to its interrogatory responses which noted that various treating physicians might be called to testify at trial thus is insufficient identification of Dr. Vogel. Duke Hospital should have specifically identified Dr. Vogel as an expert witness, thus giving plaintiff the opportunity to depose

him prior to trial and adequately prepare for his cross-examination. Although defendant apparently acted in good faith, this does not remedy the substantial probability of unfair surprise and prejudice to the plaintiff. The ends of justice require that plaintiff be granted a new trial.

[2]   One further issue argued in plaintiff's brief warrants our attention. Plaintiff contends the trial court erred in sustaining defendant's objection to her request for the identification data of the patient sharing a room with Mr. Prince during his last hospitalization. Duke Hospital was served with interrogatories on 5 June 1987 asking in Interrogatory No. 7 for the name, address and telephone numbers of Mr. Austin, the hospital roommate of the deceased. Attorneys for Duke Hospital objected to the interrogatory on the ground that the information sought was privileged and confidential by virtue of the health care provider-patient privilege. Plaintiff filed a motion to compel discovery on 13 July 1987 but failed to make an offer of proof as to what the witness would have testified. Judge Bowen heard the motion on 24 August 1987 and sustained defendant's objection to Interrogatory No. 7. Plaintiff now contends that this information is necessary to her case since Mr. Austin was the only objective, disinterested source of testimony as to the quality and quantity of nursing care given Mr. Prince.

The statute sets forth, in pertinent part:

No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132-1. Confidential information obtained in medical records shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin. Any resident or presiding judge . . . may . . . compel disclosure if in his opinion disclosure is necessary to a proper administration of justice.

N.C.G.S. § 8-53 (1986 & Cum. Supp. 1989). This privilege has generally been construed by this Court to extend only to the clinical portions of hospital medical records — that information acquired by the physician which is necessary for the physician to prescribe for the pa-

tient. *See Sims v. Insurance Co.,* 257 N.C. 32, 125 S.E.2d 326 (1962); Note, *Release of Medical Records by Hospitals in North Carolina,* 7 N.C. Cent. L.J. 299 (1970). Therefore, we conclude that it was error for the trial court not to compel defendant to produce the identification data of Mr. Austin. Because a new trial has been granted in this appeal, we do not find it necessary to discuss the harmless error argument. Upon remand, plaintiff will be entitled to the information requested in this interrogatory.

We do not deem it necessary to discuss the remaining issues since the case is being remanded for a new trial, and it is unlikely that the other assignments of error will recur upon remand.

New trial.