CLINT M. LOVENDAHL, Administrator of the Estate of NANCY LOVENDAHL WICKER, Plaintiff v. HOWARD BRADLEY WICKER, Defendant

No. COA09-954

(Filed 7 December 2010)

**1. Discovery— violations—asserting Fifth Amendment privileges in civil case—Rule 37 sanctions**

The trial court did not err in a wrongful death case by imposing sanctions under N.C.G.S. § 1A-1, Rule 37 including striking defendant's affirmative defenses for failure to comply with discovery. Violation of an order compelling discovery that results from a motion for a protective order may be the basis for sanctions under Rule 37(b). Further, the trial court previously warned that there would be consequences if defendant elected to claim his privileges under the Fifth Amendment in this civil action.

**2. Constitutional Law— right to remain silent—deposition—sanctions in civil case**

The trial court did not violate defendant's Fifth Amendment rights in a wrongful death case by imposing sanctions based on defendant's failure to answer questions at his deposition. Defendant's assertion of rights was prejudicial to the due process rights of plaintiff because it served to impede plaintiff's ability to obtain accurate discovery about the nature of defendant's affirmative defenses.

**3. Pleadings— striking affirmative defenses—consideration of alternative sanctions**

The trial court did not abuse its discretion in a wrongful death case by allegedly failing to consider alternative sanctions before striking defendant's affirmative defenses. Although defendant contended that he offered to answer certain questions at the deposition, he failed to show that he ever committed to answering the questions relevant to plaintiff's response to his contributory negligence defense or that he committed to a specific time frame for answering them. Further, the trial court expressly considered staying the proceedings and found it to be an inadequate option.

Appeal by defendant from order entered 28 April 2009 by Judge Richard W. Stone in Guilford County Superior Court. Heard in the Court of Appeals 28 January 2010.

*Hicks McDonald Noecker LLP, by David W. McDonald; and Rightsell & Eggleston, LLP, by Donald P. Eggleston, for plaintiff-appellee.*

*Teague, Rotenstreich, Stanaland, Fox & Holt, PLLC, by Paul A. Daniels, for defendant-appellant.*

GEER, Judge.

This appeal concerns litigation arising from a single-vehicle accident in which Nancy Lovendahl Wicker, a passenger in the vehicle, was killed. Plaintiff Clint M. Lovendahl, Ms. Wicker's son and the administrator of her estate, brought a negligence action against Ms. Wicker's husband, defendant Howard Bradley Wicker, who was operating the vehicle at the time of the accident. Defendant faces criminal charges stemming from the accident and refused to answer deposition questions on Fifth Amendment grounds. The trial court had pre-

viously entered an order requiring defendant to submit to a deposition, acknowledging defendant's right to assert his Fifth Amendment rights, but providing that he could not do so without consequences in this civil action. Defendant appeals from a subsequent order striking his affirmative defenses—contributory negligence and gross contributory negligence—for failing to comply with the discovery order. We affirm because the trial court properly found that defendant's invocation of his Fifth Amendment privilege deprived plaintiff of the information he needed to respond to defendant's contributory negligence and gross contributory negligence defenses.

## Facts

Ms. Wicker died after the vehicle in which she was riding ran off the road and overturned in Randolph County, North Carolina on 27 April 2008. Defendant, who was driving the vehicle, was not seriously injured in the wreck. He was ultimately charged with a number of criminal offenses, including second degree murder. Plaintiff, after being appointed executor of Ms. Wicker's estate, filed a wrongful death action against defendant on 19 August 2008, alleging that defendant's reckless, wanton, and grossly negligent operation of the vehicle caused Ms. Wicker's death.

Plaintiff alleged that when the accident occurred, defendant was speeding and operating the vehicle in a reckless manner without regard for the safety of others. He lost control of the vehicle, causing it to "leave the paved portion of the road, hit an embankment, run over a sign, cross the road, crash violently, and land upside down off the shoulder of the opposite-travelling [sic] lane."

On 17 October 2008, defendant filed an answer in which he asserted the defenses of contributory negligence and gross contributory negligence, alleging that he and Ms. Wicker had been drinking alcohol together for several hours before the accident. Defendant further alleged that, on the night of the accident, Ms. Wicker chose to ride as a passenger in his vehicle "after she had been in his presence for the past eight or ten hours and knew [or], by exercising reasonable care, should have known, of his intoxication or impairment level, the amount of alcohol or other impairing substance which he had consumed" and that it was unsafe to ride with him.

Defendant's deposition was scheduled by agreement of counsel for 22 October 2008. On the morning of 22 October 2008, defendant filed a motion to stay proceedings, objection to deposition, motion

for protective order and motion to stay discovery, and notice of hearing and request to calendar the motions for 4 December 2008. The trial court made the following unchallenged findings about what occurred at the 22 October 2008 deposition:

10. The record of the deposition of defendant was opened at 10:57 a.m. Defendant, together with his counsel, Kenneth B. Rotenstreich, Esq. of the Guilford County Bar and R. David Wicker, Jr., Esq. of the Granville County Bar was [sic] present. On the record, defendant's counsel Rotenstreich marked as Exhibit No. 1 the Objection to Deposition, Motion for Protective Order, and Motion to Stay Discovery. Rotenstreich further stated on the record, "And to proceed forward with this deposition without staying the proceedings, under the case of *Peterson versus Peterson*, which is a North Carolina Court of Appeals case, I think is inappropriate." Rotenstreich further stated for the record that "I will add that my client, after consultation with me, is intending to take his Fifth Amendment right against self-incrimination, based on the criminal charges pending. And that is the reason why I'm willing for the deposition to go forward, because the answers to the questions would be the same today than [sic] they would be next week or next month, because the criminal action is not set to be heard until sometime around December . . . [.]" Rotenstreich further stated for the record, "And we can go to the courthouse now and be heard on our motion to stay, based on the case law of *Peterson versus Peterson* and all of the cases that follow." Rotenstreich further stated for the record, "Well, we're not going to participate unless the hearing's had. You're welcome to stay on the record. We're going to walk out. I will go call the judge's champers [sic] and see if there are any judges available to hear our motion as—would you join me counsel?" Rotenstreich further stated on the record, "And again, I reiterate—and I don't need to, because these—we've already talked about it—that the answer that you're going to get, because of the criminal proceedings pending, will be the same today as they will be until the criminal proceedings are complete. So to us it makes no difference; the answers are the same." Rotenstreich further stated for the record, "Counsel for the witness is telling Counsel for the plaintiff as—that Exhibit 1 exists, it's been filed, and Exhibit 2 to this deposition is a statement that the defendant intends to read in response to the questions, based on advice of counsel."

The deposition was then adjourned.

On 13 November 2008, plaintiff filed a motion to strike defendant's answer and affirmative defenses and for entry of default as a sanction for defendant's failure to answer deposition questions. On 4 December 2008, the following motions were heard by the Honorable Catherine C. Eagles, Senior Resident Superior Court Judge: defendant's objection to deposition, defendant's motion for a protective order, defendant's motion to stay discovery, and plaintiff's motion to strike.

On 19 December 2008, Judge Eagles entered an order denying defendant's motion for a protective order and denying his motion for a stay. Judge Eagles ordered that "[d]efendant shall submit to deposition within forty-five days of the date of this Order, and may elect to claim his privileges under the Fifth Amendment of the United States Constitution; however, in the event defendant should elect to claim his privileges under the Fifth Amendment, he may not do so without consequence in the present civil action." She denied plaintiff's motion to strike without prejudice "should defendant elect to claim his privileges under the Fifth Amendment in his deposition."

On 22 January 2009, defendant's deposition was reconvened. The trial court made the following unchallenged findings about those deposition proceedings:

18. On January 22, 2009, the deposition of defendant was re-convened. At the deposition, defendant was present, together with Jeremy Kosin, Esq. of the Guilford County bar and R. David Wicker, Jr., Esq. of the Granville County Bar. On the record, defendant's counsel, R. David Wicker, Jr., stated: "I represent Howard Bradley Wicker in the criminal matter that's currently pending in Randolph County. For the record, that matter is 08-CR-6792. There are—that is second-degree murder. There are a series of related misdemeanors and also a felony death under another case caption. That matter is currently set for March the 24th on an administrative calendar." Wicker, Esq. further stated for the record: "And with that, it will be my instruction that Mr. Wicker can identify himself for the record. He can state what his current address is, but beyond that he will assert his Fifth Amendment right against self-incrimination to each and every question posed by the plaintiff in this matter. And that Fifth Amendment assertion and defense has been provided both to the plaintiff and to the court reporter. He will either read that into the record every

time a question is asked or we will stipulate that that will be his answer to each and every question that you would ask, such that you don't have to ask each of your questions and he doesn't have to read that, and that will abbreviate what we have to do here today." The defendant was then sworn, and gave his name and current residence address. Other than this information, defendant, though [sic] counsel, affirmed that Exhibit 3 to the deposition would be and is interposed as a response to each and every question that the plaintiff may have asked.[]

On 5 February 2009, plaintiff filed a motion for sanctions, a motion to strike defendant's answer, a motion to strike his affirmative defenses, and a motion for entry of default. At the hearing on the motions before the Honorable Richard W. Stone, Superior Court Judge Presiding, defendant orally moved to continue the trial in this matter. On 19 March 2009, defendant filed a written motion for a continuance of the trial. Judge Eagles denied defendant's written motion for a continuance on 23 March 2009.

On 28 April 2009, Judge Stone entered an order imposing sanctions on defendant pursuant to Rule 37(b) of the Rules of Civil Procedure. In that order, Judge Stone first denied defendant's oral motion to continue the trial. He then found:

3. Defendant was presented with two opportunities to answer questions concerning his knowledge of the facts concerning the present civil action: the first opportunity on October 22, 2008, and the second three months later on January 22, 2009. In the interim, defendant was admonished by Order of the court that if defendant elected to claim his privilege against self-incrimination at the second convening of his deposition, consequences would ensue. Defendant was represented by civil and criminal counsel, including at least three attorneys in two law firms, in determining what course of action to take.

4. Defendant elected on January 22, 2009 to provide no information other than his name and residence address. As to all other questions which plaintiff might pose, defendant expressed clearly his intention to claim his privilege against self-incrimination provided by the Fifth and Fourteenth Amendments to the United States Constitution.

5. This cause is set for trial at the May 4, 2009 Civil Jury Session of Guilford County Superior Court.

The court continued:

> 6. The Court has considered the respective interests of the parties, and the function of the courts of justice to ascertain the truth.
>
> 7. Defendant has pled affirmative defenses in this cause, and should not have it within his power to silence his own adverse testimony when such testimony is relevant to the cause of action or the defense.
>
> 8. Defendant's continued assertion of his privilege against self-incrimination, while lawful, is prejudicial to the due process rights of plaintiff and plaintiff's ability to investigate defendant's affirmative defenses.
>
> 9. Defendant's assertion of his privilege against self-incrimination has served to impede plaintiff's ability to obtain accurate discovery about the nature of defendant's affirmative defenses.
>
> 10. The Court has carefully considered defendant's conduct, as well as its cumulative effect, and has also considered the available sanctions for such conduct, including, without limitation treating defendant as in contempt, staying proceedings until defendant elects to testify, prohibiting defendant from presenting evidence, and other lesser sanctions. After thorough consideration and balancing the interests of the parties, the Court has determined that sanctions less severe than striking defendant's affirmative defenses would not be adequate.

The trial court then ordered defendant's affirmative defenses struck "as a sanction for failing to comply with discovery in the Court's discretion." Defendant filed notice of appeal on 29 April 2009.[1]

## I

**[1]** Defendant first contends that the trial court lacked authority to impose sanctions under Rule 37 at this stage of the litigation. The trial court ordered defendant's affirmative defenses stricken under Rule 37(b)(2) of the Rules of Civil Procedure, which provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . a

---

1. Although the merits of the underlying lawsuit have not yet been resolved, we have jurisdiction to hear this appeal because "an order imposing sanctions under Rule 37(b) is appealable as a final judgment." *Smitheman v. Nat'l Presto Indus., Inc.*, 109 N.C. App. 636, 640, 428 S.E.2d 465, 468, *disc. review denied*, 334 N.C. 166, 432 S.E.2d 366 (1993).

judge of the court in which the action is pending may make such orders in regard to the failure as are just . . . ." In general, "sanctions under Rule 37 are imposed only for the failure to comply with a court order." *Pugh v. Pugh*, 113 N.C. App. 375, 379, 438 S.E.2d 214, 217 (1994).

Defendant first contends that the trial court could not impose sanctions under Rule 37(b) because plaintiff never filed a motion to compel discovery pursuant to Rule 37(a). Defendant, however, moved pursuant to Rule 26(c) for an order protecting him from discovery until the criminal charges pending against him were resolved. Rule 26(c), which authorizes entry of a protective order upon motion and good cause shown, also provides that "[i]f the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." A motion for a protective order under Rule 26(c) that is denied, therefore, may end in the same result as a motion to compel discovery under Rule 37(a): an order compelling discovery. We hold that violation of an order compelling discovery that results from a motion for a protective order may be the basis for sanctions under Rule 37(b).

Defendant next argues, citing *Bd. of Drainage Comm'rs of Pitt County Drainage Dist. No. 3 v. Dixon*, 158 N.C. App. 509, 510, 581 S.E.2d 469, 470 (2003), *aff'd per curiam and disc. review improvidently allowed per curiam*, 358 N.C. 214, 593 S.E.2d 763 (2004), that he could only be sanctioned under Rule 37 if he failed to physically appear at the deposition. In *Dixon*, like this case, the party was sanctioned after he appeared at his deposition and refused to answer questions on Fifth Amendment grounds.

What distinguishes this case from *Dixon*, however, is that the trial court in *Dixon* imposed sanctions under Rule 37(d) and not, as in this case, under Rule 37(b). Rule 37(d) provides that if a party fails "to appear before the person who is to take his deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just . . . ." The Court, in *Dixon*, was construing what the word "appear" means for purposes of sanctions under Rule 37(d). 158 N.C. App. at 512, 581 S.E.2d at 471. The Court concluded that when a deposition has been noticed of a party, who is a natural person, and that "party physically appears at a deposition, the imposition of Rule 37(d) sanctions for failure to appear is not appropriate. The better course

of action would have been for [the deponent] to apply for a protective order pursuant to Rule 26(c). Then the trial court could define the scope of the examination in light of defendant's assertion of his Fifth Amendment privilege." *Id.*

In this case, the parties proceeded in accordance with "[t]he better course of action" recommended by *Dixon. Id.* Defendant filed a motion for a protective order, and Judge Eagles entered an order on 19 December 2008 denying that motion and ordering defendant to "submit" to the deposition. The issue here is not whether defendant failed to appear, within the meaning of Rule 37(d), but whether defendant violated Judge Eagles' order, thereby subjecting defendant to sanctions under Rule 37(b).

Defendant next argues that he did not, in fact, violate Judge Eagles' 19 December 2008 discovery order. Defendant claims that the order, by directing him to "submit to deposition within forty-five days of the date of this Order," only ordered that he physically appear at the deposition and did not require him to answer any questions. Defendant reasons that since he did appear for the deposition, he complied with the 19 December 2008 order.

If we were to accept defendant's reading of the 19 December 2008 discovery order, then we would have to conclude that Judge Eagles did nothing more than direct defendant to do exactly what he did in October 2008 at the first convening of the deposition—appear at the deposition and do nothing more. This construction of the order would render meaningless the warning in Judge Eagles' order that "in the event defendant should elect to claim his privileges under the Fifth Amendment, he *may not do so* without consequence in the present civil action." (Emphasis added.)

We instead construe the order as directing defendant to appear at the deposition and to either answer the questions posed to him or assert the Fifth Amendment privilege. The order further placed him on notice that if he chose not to answer the questions based on his Fifth Amendment privilege, there would be consequences in this civil action. Indeed, this is all Judge Eagles could legally do in denying defendant's motion for a protective order and ordering that defendant provide discovery. *See Roadway Express, Inc. v. Hayes,* 178 N.C. App. 165, 172, 631 S.E.2d 41, 46-47 (2006) (holding that trial court erred in ordering defendant to answer discovery requests following assertion of Fifth Amendment rights); *Sugg v. Field,* 139 N.C. App. 160, 164, 532 S.E.2d 843, 845-46 (2000) ("Though it is true that a court

cannot compel an individual to disclose information which may later be used against him in a criminal proceeding, this does not mean that an individual's decision to invoke the privilege may be done without consequence."). Based on the terms of this order, when defendant chose not to answer the questions, Judge Stone was then authorized to determine what the consequences of that choice would be in this case.

II

[2] Defendant further contends that the trial court's imposition of sanctions for his failure to answer questions at his deposition violated his Fifth Amendment rights. In *Cantwell v. Cantwell*, 109 N.C. App. 395, 397, 427 S.E.2d 129, 130, *disc. review improvidently allowed per curiam*, 335 N.C. 235, 436 S.E.2d 588 (1993), this Court recognized that a party may properly invoke his or her Fifth Amendment rights in a deposition in a civil proceeding. The Court stressed, however, that "[t]he privilege against self-incrimination is intended to be a shield and not a sword." *Id.* It reasoned that " 'if a plaintiff seeks affirmative relief or a defendant pleads an affirmative defense[,] he should not have it within his power to silence his own adverse testimony when such testimony is relevant to the cause of action or the defense.' " *Id.* (quoting *Christenson v. Christenson*, 281 Minn. 507, 517, 162 N.W.2d 194, 200 (1968)).

The Court consequently held that "a party has a right to seek affirmative relief in the courts, but if in the course of her action she is faced with the prospect of answering questions which might tend to incriminate her, she must either answer those questions or abandon her claim." *Id.* at 398, 427 S.E.2d at 131. The Court explained that in giving the party invoking the Fifth Amendment the choice to either (1) shield himself from criminal charges by refusing to answer questions and abandon his affirmative claim or (2) waive the privilege and pursue the claim, "an equitable balance" is created between the party's right to assert his or her privilege and the opposing party's right to defend him or herself against claims. *Id.*

In *Sugg*, 139 N.C. App. at 165, 532 S.E.2d at 846, this Court affirmed the trial court's dismissal of the plaintiff's complaint alleging that defendants had trespassed on his property, taken embarrassing videotapes belonging to plaintiff, and shown the videotapes to others. After the plaintiff refused to answer questions in his deposition about the whereabouts of the videotapes once the defendants had returned them, the defendants sought an order compelling disclosure. *Id.* at

162, 532 S.E.2d at 845. At the reconvened deposition, the plaintiff refused to answer questions based on his Fifth Amendment rights. *Id.*

On appeal from the trial court's order dismissing the action, this Court affirmed, stating that prior decisions had made it "clear that where the privileged information sought from a plaintiff in discovery is material and essential to the defendant's defense, plaintiff must decide whether to come forward with the privileged information or whether to assert the privilege and forego the claim in which such information is necessary." *Id.* at 164, 532 S.E.2d at 846. The Court acknowledged that "[d]ismissal is not automatic," but rather a trial court must employ a balancing test "weighing a party's privilege against self-incrimination against the other party's rights to due process and a fair trial." *Id.*

The Court concluded that the information the plaintiff refused to disclose "was essential to defendants' ability to defend against actual and punitive damages" because the plaintiff's testimony might have "significantly mitigated" the damages. *Id.* at 165, 532 S.E.2d at 846. The plaintiff's refusal to answer on Fifth Amendment grounds "severely limited defendants' ability to present a defense to plaintiff's claim for damages." *Id.* This Court concluded that the trial court had "carefully considered and balanced plaintiff's right to assert his privilege against self-incrimination as opposed to defendants' due process rights to defend against his allegations and determined that, without access to the information which plaintiff refused to divulge, defendants' rights were unduly prejudiced." *Id.* The Court, therefore, affirmed the order of dismissal. *Id.*

In *In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 618 S.E.2d 819 (2005), *disc. review denied*, 360 N.C. 290, 628 S.E.2d 382 (2006), this Court applied the *Sugg* analysis. The only disputed issue in the pending action was the amount of the plaintiff's damages, and an important factor in calculating those damages was the amount of profit the plaintiff had received from a house. The trial court dismissed the action under Rule 37 and Rule 41 of the Rules of Civil Procedure based, in part, on the plaintiff's assertion of his Fifth Amendment privilege in response to questions by defense counsel related to the house sale. *Id.* at 250, 618 S.E.2d at 828.

This Court held that the trial court properly applied the *Sugg* balancing test. On the one hand, the plaintiff's "decision to assert the Fifth Amendment" rather than answer the deposition questions "served to impede [the defendant's] ability to obtain accurate discov-

ery" on an issue that the trial court found was of importance to the case. On the other hand, the trial court "properly indicate[d] that the value of asserting the Fifth Amendment was minimal in light of" conduct to which the defendant had already testified. *Id.* at 250-51, 618 S.E.2d at 828.

In *Roadway Express*, 178 N.C. App. at 172-74, 631 S.E.2d at 46-47, this Court held that this analysis also applies to a defendant's assertion of his Fifth Amendment rights. In *Roadway*, the defendant refused to respond based on the Fifth Amendment to the plaintiff's requests for information relating to any prescription drugs that defendant may have been under the influence of at the time of the accident. After concluding that the trial court erred in ordering the defendant to respond, *id.* at 172, 631 S.E.2d at 46-47, the Court observed that the defendant's refusal to respond to the discovery requests "may preclude him from asserting certain affirmative defenses." *Id.*, 631 S.E.2d at 47.

In *Roadway Express*, the defendant had raised the affirmative defenses of sudden emergency and contributory negligence. *Id.* at 173 & n.2, 631 S.E.2d at 47 & n.2. Although the Court concluded that the contributory negligence defense did "not appear to be affected by Defendant's invocation of his Fifth Amendment rights," *id.* at 173 n.2, 631 S.E.2d at 47 n.2, the Court determined that the "[d]efendant's state of mind, including whether he was under the influence of prescription drugs, at the time of the accident must be evaluated to determine whether Defendant had the ability to act as an ordinarily prudent person would have acted at the time of the accident." *Id.* at 173, 631 S.E.2d at 47. The Court, therefore, ruled that upon remand for trial

> our holding permits Defendant to assert his Fifth Amendment privilege to protect himself from self-incrimination in responding to Plaintiff's request for admissions and interrogatories relating to factual information on medications he may have been under the influence of at the time of the accident. However, at trial, if the trial court determines such responses are essential to evaluate the application of the sudden emergency doctrine, the trial court *must hold* that Defendant's choice to invoke his rights not to respond to the request for admissions and interrogatories precludes his assertion of the sudden emergency defense to Plaintiff's allegations.

*Id.* at 173-74, 631 S.E.2d at 47 (emphasis added).

Here, while, in contrast to *In re Pedestrian Walkway Failure*, the value to defendant of asserting his Fifth Amendment rights may be substantial, the trial court found that this assertion of rights "is prejudicial to the due process rights of plaintiff" because it "has served to impede plaintiff's ability to obtain accurate discovery about the nature of defendant's affirmative defenses." The trial court, after balancing the interests of both parties and considering other lesser sanctions, "determined that sanctions less severe than striking defendant's affirmative defenses would not be adequate." This conclusion was not manifestly unreasonable and, therefore, was not an abuse of discretion. *See In re Pedestrian Walkway Failure*, 173 N.C. App. at 246, 618 S.E.2d at 826 ("The imposition of sanctions under Rule 37 is in the sound discretion of the trial judge and cannot be overturned absent a showing of abuse of that discretion." (internal quotation marks omitted)).

Defendant alleged in his answer[2]:

> Prior to April 27, 2008, at 11:38 p.m., and specifically within the ten hours preceding that time and date, Howard Bradley Wicker, together with Nancy Lovendahl Wicker, had been together, in each others [sic] presence, and had been in a position to observe each other's behavior, including the participation in consuming alcoholic beverages and at the time of the accident, April 27, 2008, at 11:38 p.m., and for the thirty minutes to one hour before that time, Nancy Lovendahl Wicker, decedent, knew the condition of Defendant Howard Bradley Wicker, including but not limited to his level of intoxication or impairment and ability to drive an automobile.
>
> . . . .
>
> On this occasion and all times herein relevant, Nancy Lovendahl Wicker elected to ride as a passenger in the 2005 Volvo automobile owned and operated by Howard Bradley Wicker after she had been in his presence for the past eight or ten hours and knew, [or] by exercising reasonable care, should have known, of his intoxication or impairment level, the amount of alcohol or other impairing substance which he had consumed and knew, and exercised [sic] a reasonable care should have known, that [it] was

---

2. Defendant asserted only two affirmative defenses: contributory negligence and gross contributory negligence.

unsafe to ride as a passenger in the motor vehicle with Defendant Howard Bradley Wicker at that time.

. . . .

On this occasion and all times herein relevant, Nancy Lovendahl Wicker was careless and negligent in that she:

a)  Rode as a passenger in a motor vehicle with the Defendant when she knew, [or] exercising reasonable care, should have known that he had consumed some sort of impairing substance to the point that he had impaired both of his mental and physical facilities and it was unsafe to drive;

b)  Rode as a passenger in a motor vehicle with Defendant Howard Bradley Wicker after she knew, [or] exercising reasonable care, should have known that he was impaired by an impairing substance;

c)  Rode as a passenger in a motor vehicle with Defendant Howard Bradley Wicker after she had been in [his] presence for such a sufficient period [of] time to have observed his behavior and have been aware of his condition and ability to drive or not be able to drive an automobile;

d)  Rode as a passenger in a motor vehicle with Defendant Howard Bradley Wicker and failed to remonstrate;

e)  Failed to exercise that degree of care which a reasonable and prudent person would have exercised under the same or similar circumstances; and

f)  Was careless and negligent in other respects to be proven at trial[.]

To prevail on the defense of contributory negligence, defendant must show Ms. Wicker voluntarily chose to get in the car with him when she knew or should have known he was too impaired to drive. *See Coleman v. Hines*, 133 N.C. App. 147, 149, 515 S.E.2d 57, 59 (explaining that "where a passenger 'enters an automobile with knowledge that the driver is under the influence of an intoxicant and voluntarily rides with him, he is guilty of contributory negligence *per se*' " (quoting *Davis v. Rigsby*, 261 N.C. 684, 686-87, 136 S.E.2d 33, 35 (1964))), *disc. review denied*, 350 N.C. 826, 539 S.E.2d 281 (1999).

**LOVENDAHL v. WICKER**

[208 N.C. App. 193 (2010)]

Defendant is the only person who was with Ms. Wicker prior to her becoming a passenger in defendant's car and while they were driving before the accident. Since Ms. Wicker is deceased, defendant has information that is essential to plaintiff's ability to respond to the contributory negligence defense contending that she negligently (or with gross negligence) drove with him knowing that he was intoxicated.

Defendant urges that there are other sources by which it could be determined whether Ms. Wicker voluntarily got into the car with defendant prior to the accident. Plaintiff, in discovery, identified a neighbor who witnessed defendant carry Ms. Wicker out of the house and put her in the car that day. Plaintiff also stated in his deposition that in his opinion, his mother should not have been conscious based on the blood alcohol level she was found to have after the accident, a fact that defendant argues could be used to indicate Ms. Wicker did not voluntarily get into the car that evening.

Defendant's argument, however, misses a critical point. Defendant could not assert contributory negligence as an affirmative defense in his answer unless the defense was "well grounded in fact and [was] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . . ." N.C.R. Civ. P. 11(a). Thus, defendant must have a factual basis for his allegations that Ms. Wicker "elected to ride as a passenger" in a car operated by defendant, that she "failed to remonstrate" while defendant was driving, and she "[f]ailed to exercise that degree of care which a reasonable and prudent person would have exercised under the same or similar circumstances."

Plaintiff cannot learn that factual basis for the affirmative defenses and prepare to defend against it without obtaining discovery from defendant. Indeed, defendant, in arguing that plaintiff did not need to take his deposition, claims that in plaintiff's deposition, "[h]e also agreed that he had no basis to dispute the allegations contained in paragraph III of the affirmative defense that the Defendant and his wife had been together for 8-10 hours preceding the accident and had the opportunity to observe each other during that time and that Mrs. Wicker knew the level of the Defendant's intoxication or impairment." Since it appears that defendant is the only witness to those eight to 10 hours, plaintiff can have no basis for challenging that allegation without taking defendant's deposition.

We could speculate about the different options for addressing the potential factual bases for the contributory negligence defense. One

LOVENDAHL v. WICKER

[208 N.C. App. 193 (2010)]

of those options would certainly be by presenting evidence that Ms. Wicker was not conscious when she was carried to the car, but plaintiff has no way of knowing, without discovery, whether defendant has a negligence theory that a lack of consciousness fails to rebut. Even as to the question of Ms. Wicker's consciousness, plaintiff needs to know what defendant would likely say at trial on that issue. *Cf. Prince v. Duke Univ.*, 326 N.C. 787, 789-90, 392 S.E.2d 388, 389-90 (1990) (recognizing that party is unfairly prejudiced when denied opportunity to depose a witness prior to trial because of inability to prepare for cross-examination).

Moreover, without deposing defendant, plaintiff would not be able to prepare to meet defendant's claim of contributory negligence with evidence that defendant acted willfully and wantonly negligent. *See Sloan v. Miller Bldg. Corp.*, 119 N.C. App. 162, 167, 458 S.E.2d 30, 33 (holding proof of willful and wanton negligence can overcome claim of contributory negligence), *disc. review denied*, 341 N.C. 652, 462 S.E.2d 517 (1995). Plaintiff also needs to know the evidentiary basis for defendant's contention—anticipating a willful and wanton argument—that Ms. Wicker was grossly contributorily negligent.

Although defendant argues that plaintiff can anticipate what defendant's testimony will be by looking at defendant's answer, the answer does not provide the detail necessary to prepare to respond to the defense or to cross-examine defendant. Moreover, defendant's answer is unverified, and there is no guarantee that he will testify at trial in line with what he has alleged in his pleadings. Indeed, the purpose of a pre-trial deposition is to test the allegations made in the pleadings under penalty of perjury and to obtain additional details that may undermine those allegations. It would be fundamentally unfair to require plaintiff to proceed to trial totally unprepared for what position defendant is going to take with regard to the contributory negligence defense.[3]

In *In re Edmond*, 934 F.2d 1304, 1306 (4th Cir. 1991), the defendant in a civil case had asserted his Fifth Amendment rights. Then, immediately before trial, he moved for summary judgment, attaching an unverified affidavit. On appeal from the trial court's denial of his motion for summary judgment, the Court affirmed, explaining:

---

3. We note that defendant's reliance on his answer as a substitute for his testimony undermines his assertion of his Fifth Amendment rights. If defendant is representing to the Court that his testimony will be the same as the information in his answer, then this case may be similar to *In re Pedestrian Walkway Failure*, in which the plaintiff's admissions in his deposition rendered his assertion of his Fifth Amendment rights of "minimal" value.

By selectively asserting his Fifth Amendment privilege, Edmond attempted to insure that his unquestioned, unverified affidavit would be the only version. But the Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion.

*Id.* at 1308. The Court then held that because the trial court had properly declined to consider the affidavit, the defendant had failed to meet his burden of showing that no genuine issue of material fact existed. *Id.*

Similarly, here, defendant is attempting to ensure that by virtue of his invocation of the Fifth Amendment privilege, his unverified pleading is the only version of the facts plaintiff has before him to prepare for trial. *See also SEC v. Zimmerman*, 854 F. Supp. 896, 898-99 (N.D. Ga. 1993) (holding defendant could not withhold evidence in discovery on Fifth Amendment grounds and then waive privilege at trial and surprise plaintiff with evidence, explaining that "[t]he Fifth Amendment privilege cannot be invoked to oppose discovery and then tossed aside to support a party's assertions").

Given these circumstances, we hold that the trial court properly balanced the interests of the parties. The court did not abuse its discretion in determining that since defendant chose to assert his Fifth Amendment rights, his affirmative defenses should be struck.

## III

[3] Defendant, however, further argues that the trial court erred by not adequately considering alternative sanctions before striking his affirmative defenses. Although a trial court is required to consider less severe sanctions before dismissing a party's claim with prejudice under Rule 37, it retains the discretion to impose a dismissal after doing so. *Global Furn., Inc. v. Proctor*, 165 N.C. App. 229, 233, 598 S.E.2d 232, 235 (2004) ("The trial court is not required to *impose* lesser sanctions, but only to *consider* lesser sanctions."). "[T]his Court will affirm an order for sanctions where 'it may be inferred from the record that the trial court considered all available sanctions' and 'the sanctions imposed were appropriate in light of [the party's] actions in th[e] case.' " *In re Pedestrian Walkway Failure*, 173 N.C. App. at 251, 618 S.E.2d at 828 (quoting *Hursey v. Homes by Design, Inc.*, 121 N.C. App. 175, 179, 464 S.E.2d 504, 507 (1995)).

We have already concluded that the sanctions imposed were appropriate, but we must still consider whether the trial court considered less severe sanctions. In *In re Pedestrian Walkway Failure*, this Court held that a trial court had indicated that it fulfilled its duty to consider lesser sanctions when it stated in the order that it had considered the available sanctions and determined that sanctions less severe than dismissal would not be adequate. *Id.*, 618 S.E.2d at 829.

In this case, the trial court stated:

10. The Court has carefully considered defendant's conduct, as well as its cumulative effect, and has also considered the available sanctions for such conduct, including, without limitation treating defendant as in contempt, staying proceedings until defendant elects to testify, prohibiting defendant from presenting evidence, and other lesser sanctions. After thorough consideration and balancing the interests of the parties, the Court has determined that sanctions less severe than striking defendant's affirmative defenses would not be adequate.

This conclusion is even more specific than that found sufficient in *In re Pedestrian Walkway Failure* and, therefore, is adequate to demonstrate that the trial court considered lesser sanctions.

Defendant nonetheless contends that the trial court erred in failing to consider two alternative ways to resolve the parties' competing interests. First, defendant points out that he offered to answer certain questions at the deposition. The trial court found, however, that counsel for defendant stated on the record at the second deposition: " '[Defendant] can state what his current address is, but beyond that he will assert his Fifth Amendment right against self-incrimination to each and every question posed by the plaintiff in this matter.' " In any event, defendant has not shown that he ever committed to answering the questions relevant to plaintiff's response to his contributory negligence defense or that he committed to a specific time frame for answering them.

Defendant also points out that the trial court could have waited to proceed with the civil case until after the criminal proceedings had been resolved, at which point he would have answered any and all questions. The trial court expressly considered the option of staying proceedings and found it inadequate. Defendant has not cited any North Carolina case requiring the trial court to put off a civil case indefinitely—requiring a plaintiff to wait to prosecute his claims—until a criminal case is resolved, presumably including any appeal.

**LOVENDAHL v. WICKER**

[208 N.C. App. 193 (2010)]

Moreover, Judge Eagles declined to stay discovery in her order entered 19 December 2008 and denied defendant's motion to continue the trial in an order entered 23 March 2009. The case was then set for trial on 4 May 2009. Defendant did not appeal either order refusing to postpone the case until after the criminal proceedings were resolved. His notice of appeal reads: "Defendant Howard Bradley Wicker[] hereby gives notice of appeal to the Court of Appeals of North Carolina from the Order dated April 28, 2009 in the Superior Court of Guilford Count[y] in which the Honorable Richard W. Stone struck the Defendant's Affirmative Defenses." The Defendant has not explained in what way Judge Stone's order was an abuse of discretion in light of Judge Eagles' denial of the motion for a continuance, requiring plaintiff and defendant both to proceed to trial on 4 May 2009.

We note that defendant asks in the conclusion of both his main brief and his reply brief that this Court, in addition to reversing the order striking defendant's affirmative defenses, also remand this case with instructions directing the trial court to stay the proceedings until the criminal action against defendant has been resolved. Because defendant did not appeal Judge Eagles' orders, the issue of a stay or the denial of a continuance is not before us.[4] Since, however, the trial court stayed this case pending appeal, defendant has effectively received a substantial stay of the proceedings.

In sum, we hold that Judge Stone did not abuse his discretion in entering the order striking defendant's affirmative defenses. The order is, therefore, affirmed.

Affirmed.

Judges CALABRIA and STEPHENS concur.

---

4. We express no opinion whether such an appeal would be a permissible interlocutory appeal. *See Howerton v. Grace Hosp., Inc.*, 124 N.C. App. 199, 201, 476 S.E.2d 440, 442-43 (1996) (holding that trial court's denial of motion to stay state proceedings pending outcome of related federal proceedings was interlocutory order that could not be immediately appealed absent showing that substantial right would be affected).