IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1147

Filed 5 November 2025

Mecklenburg County, No.13CVD016798-590

CATHERINE KINCHELOE (now WILKINSON), Plaintiff,

v.

JOHNATHAN KINCHELOE, Defendant.

Appeal by defendant from orders entered on 8 March and 24 August 2022 and 31 January and 27 March 2023 by Judge Elizabeth T. Trosch in District Court, Mecklenburg County. Heard in the Court of Appeals 11 June 2024.

> *James, McElroy & Diehl, P.A., by Preston O. Odom, III, Haley E. White, and Kristin J. Rempe, for plaintiff-appellee.*
>
> *Myers Law Firm, PLLC, by Matthew R. Myers, for defendant-appellant.*

STROUD, Judge.

Defendant-father ("Father") appeals from an "Order Denying [Father]'s Motion to Dismiss and [Father]'s Motion for Protective Order; Motion to Quash/Amend Subpoena" ("Order Denying Motion to Dismiss"); an "Order (Re: Sanctions)" ("Sanctions Order"); an "Order for Attorney's Fees"; and an "Order Modifying Child Support" ("2023 Child Support Order"). Because the trial court complied with this Court's mandate in *Kincheloe v. Kincheloe*, 278 N.C. App. 62, 862 S.E.2d 28 (2021) ("*Kincheloe I*"), filed on 15 June 2021, as well as Rule 63 of our North Carolina Rules

of Civil Procedure, the trial court did not err as a matter of law in holding a new hearing on all issues. The trial court's findings of fact in the 2023 Child Support Order are supported by competent evidence, and those findings support the trial court's conclusions of law and its determination of child support. We affirm the trial court's orders.

## I.  Procedural Background

This Court addressed a prior appeal in this matter in *Kincheloe I.* On 10 July 2019, Judge Aretha V. Blake entered an "Order Modifying Child Support, Establishing Wage-Withholding and Setting Arrears" ("2019 Child Support Order" or "2019 Order"). Mother appealed the 2019 Order to this Court. Our opinion provides the case history leading up to the 2019 Child Support Order addressed in that appeal:

> [Plaintiff-mother ("Mother")] and Father had two children during their marriage. In 2013, the parties separated. Mother filed a complaint with claims for child custody, child support, post-separation support, alimony, and equitable distribution. Father filed an answer and counterclaims for custody, child support, and equitable distribution. In December 2013, Mother and Father entered into a consent order resolving their claims of child custody, child support, and equitable distribution ("2013 Consent Order"). The 2013 Consent Order did not include detailed findings regarding the parties' incomes and calculation of child support but noted the parties had agreed upon the calculation based upon their incomes and the costs of medical and dental insurance provided by Father. The parties stipulated that the child support of $820.00 per month was "a compromise and shall not be deemed to be a deviation from the Guidelines." Father was ordered to pay the child support "bi-weekly by bank transfer." The 2013 Consent Order also provided for Father

to maintain medical and dental insurance for the children; to pay 60% of any uninsured expenses; and to pay 60% of "the costs of all agreed-upon extracurricular activities." The 2013 Consent Order also noted that the parties would enter into a separate agreement regarding post-separation support and alimony and Mother would dismiss these claims.

On 23 May 2017, Mother filed a motion to modify child custody, to increase child support, and to appoint a parenting coordinator. Mother alleged the existing child support order was over three years old and she believed child support would increase by more than 15% based upon "the parties' incomes and child-related expenses." Father filed a response, alleging upon information and belief that the child support amount should be decreased. The parties agreed to a temporary consent order modifying child custody and appointing a parenting coordinator. Father filed a motion to deviate from the child support guidelines, alleging that guideline child support "may exceed the reasonable needs of the children or would otherwise be unjust or inappropriate." Mother filed a motion for wage garnishment and to determine child support arrears and attorney's fees. She alleged Father had failed to pay the full amount of his child support in various months when he deducted "what he believes, Mother owes him for various medical and extracurricular expenses."

There were multiple hearings on the various motions before the trial court. The trial court heard the motions of both parties regarding child support, wage garnishment, determination of arrears, and deviation from the Child Support Guidelines on 26 June and 14 September 2018.

*Kincheloe I*, 278 N.C. App. at 63-64, 862 S.E.2d at 31-32 (brackets omitted).

In *Kincheloe I*, we reversed and remanded the 2019 Child Support Order for

entry of a new order complying with North Carolina General Statute Section 50-13.4

("Action for support of minor child"). *See* N.C. Gen. Stat. § 50-13.4 (2023). Our mandate directed as follows:

> [T]he trial court's order is reversed and remanded for entry of a new order which complies with North Carolina General Statute [Section] 50-13.4. If either party requests additional hearing after remand, the trial court shall receive additional evidence prior to entry of a new order. If neither party requests additional hearing, the trial court may enter a new order based solely upon the existing record.

*Kincheloe I*, 278 N.C. App. at 77, 862 S.E.2d at 39.

After remand, Father filed a motion for a "Protective Order (Rule 26(c)); Motion to Quash/Amend Subpoena" on 26 August 2021 to quash or amend a subpoena from Mother which sought financial information from periods after the trial court's last hearing date for Mother's 2017 motion to modify, which took place in September 2018. Father argued that on remand, the trial court was bound to consider the record as it existed before the 2019 appeal or to consider evidence as it existed before the last hearing date in September 2018.

Mother filed an "Amended and Supplemental Motion to Modify Child Support and Motion for Attorney's Fees" on 2 September 2021. She contended that Father's income had substantially increased between the entry of the 2013 Consent Order and the 2017 motion to modify child support since the 2017 motion to modify was last heard in September 2018. Mother also contended her expenses had increased. She had moved out of her mother's home into her own home, and the costs of the children's

expenses had increased. Mother alleged that Father had not reimbursed her for his portion of the children's expenses and had refused to pay child support based on his allegedly increased income.

Father filed a "Motion to Dismiss (Rule 12)" on 16 September 2021. The motion was directed toward Mother's 2 September 2021 "Amended and Supplemental Motion to Modify Child Support and Motion for Attorney's fees." It alleged grounds under Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure. Father specifically alleged that the 2019 Child Support Order had been remanded for the trial court to make new findings of fact and conclusions of law to support the 2019 Order in compliance with North Carolina General Statute Section 50-13.4, not to address circumstances irrelevant to the 2019 Order. Essentially, Father argued that his income and expenses after September 2018 were irrelevant because the trial court only had the authority to enter an order addressing Mother's 2017 motion to modify child support, with an order based on evidence presented and circumstances existing as of the motion's last hearing date in September 2018.[1] Father also filed an answer to Mother's 2017 motion to modify child support.

Judge Blake voluntarily disqualified herself from presiding in the proceedings over the matter by order entered on 29 September 2021.

---

[1] Father's response to Mother's motion denied her factual allegations and asserted that "[a]ny allegation or evidence subsequent to the circumstances of the parties on [14 September] 2018 is outside the jurisdiction of the Court at this time."

Mother filed a motion to modify child custody and a motion for a psychological evaluation of one of the minor children on 3 February 2022. Mother asked the trial court to (1) award her sole legal custody of the children with regard to mental health decisions, (2) order a psychological examination be conducted for one child, and (3) direct Father to pay for the examination.

On 16 December 2021, Mecklenburg County Chief District Court Judge Elizabeth Thorton Trosch held a hearing on Father's "Protective Order (Rule 26(c)); Motion to Quash/Amend Subpoena." The trial court entered an Order Denying Motion to Dismiss on 8 March 2022. The trial court made findings of fact regarding the procedural history of the case and determined that following remand from this Court, Mother had requested an additional hearing. Therefore, the trial court found that "an additional hearing must be held." The trial court found that

> [i]n *Kincheloe [I]*, [this Court] reversed and remanded the 2019 Modification Order with instructions to hold an additional hearing if requested by either party. Th[is Court] did not otherwise specify or limit the scope of the evidence that may be received at the hearing on remand, leaving that decision entirely within the trial court's discretion.

The trial court ruled that it would consider additional evidence "including evidence which has arisen since the 2018 Evidentiary Hearings" and could "enter a new order based on the existing evidence or new evidence presented at the additional hearing." The court (1) denied Father's motion for protective order, (2) denied Father's motion to dismiss Mother's amended and supplemental motion, and (3) allowed the parties

to present evidence on the children's current needs. The trial court indicated that it would determine the parties' arrearages based on Mother's 2017 motion to modify and 2021 amended and supplemental motion to modify. The court decreed that "[w]ithin 60 days from the entry of th[e] Order, [ ]Father shall respond to [ ]Mother's [f]irst [r]equest for [p]roduction of [d]ocuments."

On 12 July 2022, Mother filed a motion for sanctions under "Rules 11 and Rule 37(b)(2) of the North Carolina Rules of Civil Procedure and Rule 8 and Rule 22" of Mecklenburg County's "Local Rules for Domestic Cases." She alleged that Father had produced financial documents from a six-month period between October 2021 (the month after Mother filed her amended and supplemental motion) through March 2022 but had otherwise "refused" to produce documents covering 1 January 2018 through the date of her motion. Mother asked the trial court to sanction Father by prohibiting him from presenting evidence of his expenses and requiring him to pay Mother's attorney's fees incurred in prosecuting the motion. The court heard the motion on 13 July 2022.

In the Sanctions Order entered on 24 August 2022, the trial court found that in Father's supplemental responses to Mother's request for production of documents, he had failed to produce bank statements and credit card statements from the period of 1 January 2017 through September/November 2021. Despite the trial court's rejection on 8 March 2022 of Father's argument in his motion to dismiss that the trial court could only consider evidence up to September 2018 in the hearing on remand,

Father continued to assert his claim that evidence after that date was irrelevant, in support of his objections to Mother's discovery requests.

The remanded child support determination had been scheduled for 13 July 2022. The trial court made detailed findings of fact regarding the procedural history and Father's refusal to provide several years' worth of financial information. The trial court found that Father's failure to comply with the court's order to provide complete discovery responses prejudiced the court and Mother. Although Mother had requested that the trial court sanction Father by striking his 2018 and 2022 financial affidavits and "prohibiting him from offering evidence of his expenses," the trial court ordered the "lesser sanctions" of ordering Father to: (1) produce the requested documents to Mother, including bank account and credit card statements dated 1 January 2018 through August 2022 and (2) reimburse Mother's attorney's fees related to her motion for sanctions, with the amount of fees to be determined at the "remanded child support proceeding" scheduled for 30 August 2022.

Following hearings conducted on 13 and 14 July 2022 and 30 August 2022, the trial court entered the 2023 Child Support Order on 27 March 2023. The 2023 Child Support Order comprises 26 pages including detailed findings of fact, several tables summarizing findings of the parties and expenses of the children, conclusions of law, and decree provisions. Of note for this appeal, the trial court concluded that as Chief District Court Judge, she had authority to "act in substitution of Judge Blake pursuant to Rules Civ[il] Proc[edure], [North Carolina General Statute Section] 1A-

1, Rule 63 to effectuate the directive of the North Carolina Court of Appeals and finalize the [2019 Child Support Order,]" but this authority "[wa]s limited to ministerial acts necessary to finalize an act already performed by a trial judge who has become unavailable." Because Chief Judge Trosch could not "make findings of fact, conclusions of law, or declare a judgment based upon evidence presented at a trial over which she did not preside," she was unable to "effectuate the directive of the Court of Appeals to enter more adequate findings of fact based on the evidence presented at the 2018 trial" based on the existing record. Instead, the parties had the opportunity to present all relevant evidence to establish child support.

There had been a substantial change in circumstances since the entry of the 2013 Consent Order for child support until the filing of the 23 May 2017 motion to modify child support. The trial court concluded that Mother's 2 September 2021 amended and supplemental motion to modify child support and motion for attorney's fees was premature as there was no final order of permanent child support (other than the 2013 Consent Order) to modify on 2 September 2021. Citing *Crews v. Paysour*, 261 N.C. App. 557, 821 S.E.2d 469 (2018) (*Crews II*), the trial court also concluded that the motion was moot. It was obligated to take evidence of the parties' current circumstances, and

> [a]n order establishing permanent child support effective the date of the last hearing after remand from the Court of Appeals [wa]s necessary and appropriate to ensure that the current reasonable needs of the minor children for support and maintenance [we]re met by the parties without the

- 9 -

burden and expense of additional motions, hearings and
delay.

The trial court determined that Father was responsible for child support of
$1,902.40 per month, effective from 1 June 2017 through 30 August 2022, and ordered
Father to pay Mother child support arrearages of $79,127.46 ($1,648.49 per month
for 48 months). The court determined that Father was responsible for 60% of the
uninsured medical, hospitalization, therapy, orthodontic, dental, and vision expenses
for the minor children from 1 June 2017 through 30 August 2022 and Mother 40%;
Father was responsible for 60% of costs for agreed-upon extracurricular activities and
Mother was to pay 40%. For expenses incurred between 2015 and 2022, Father was
ordered to pay Mother $6,548.96 in monthly payments of $136.44 for forty-eight
months.

Beginning 1 September 2022, Father's child support obligation went up to
$2,062.66 per month, and he was ordered to: maintain health insurance coverage for
the children; pay 75% of the children's uninsured medical, therapy, dental, and vision
expenses; and pay 75% of agreed upon extracurricular activity expenses. Mother was
to pay 25% of the children's uninsured medical, therapy, dental, and vision expenses,
and pay 25% of agreed upon extracurricular activity expenses.

Father appeals the Order Denying Motion to Dismiss entered on 8 March 2022,
the Sanctions Order entered on 24 August 2022, the Order for Attorney's Fees entered
on 31 January 2023, and the 2023 Child Support Order.

## II.     Appeal

### A.     Scope of Hearing on Remand

We first address Father's challenges to the trial court's Order Denying Motion to Dismiss and the 2023 Child Support Order followed by challenges raised against the Sanctions Order and the Order for Attorney's Fees.  We note that Father does not make any specific argument on appeal regarding the trial court's Order Denying Motion to Dismiss.  Although Father's motion to dismiss was based on Rule 12(b)(1) and (6), he makes no argument as to why Mother's motion would be subject to dismissal under those Rules.  Instead, his arguments are based on conclusion of law 6 in the 2023 Child Support Order.  His primary argument on appeal, other than some challenges to particular findings of fact, is that the trial court did not comply with this Court's mandate in *Kincheloe I*, and on remand, it was required to enter an order for modification of child support based only on evidence presented during the 2018 child support hearing.

### *1.  Trial Court's Compliance with Mandate of Kincheloe I*

Father argues that the trial court erred by making findings of fact and conclusions of law based on "inadmissible" evidence in both the Order Denying Motion to Dismiss and the 2023 Child Support Order.  Father contends this Court did not anticipate the lower court's consideration of evidence pertaining to any period beginning after the 2019 Child Support Order was entered or even after the underlying evidentiary hearings concluded in September 2018.  In its 2023 Child

Support Order, the court calculated the parties' child support obligations and arrearages based on evidence of the parties' incomes and expenses between 2017 and 2022. According to Father, the trial court violated this Court's mandate to correct the 2019 Child Support Order. He also asserts that "[i]n [c]onclusion of [l]aw 6, the trial court went beyond the scope of what was to be considered on remand in order to correct the deficiencies in the order." We disagree.

We review the trial court's conclusions of law, including its compliance with this Court's mandate in *Kincheloe I, de novo. State v. Watkins*, 246 N.C. App. 725, 730, 783 S.E.2d 279, 282 (2016) ("[T]his Court's interpretation of its own mandate is properly considered an issue of law reviewable *de novo*."). In its 2023 Child Support Order, the trial court's conclusion of law 6 states that it

> is obligated, after four years of litigation on the 2017 [m]otion to [m]odify, to take evidence during the hearing on remand to determine the current reasonable needs of the minor children for maintenance and support and the relative ability of the parties to provide support and to enter an order that addresses the current circumstances. [*Crews II*], 261 N.C. App[.] 557 (2018).

The trial court also addressed this issue in its conclusions of law in the Order Denying Motion to Dismiss:

> 3. It is well established in the [S]tate of North Carolina that "on the remand of a case after appeal, the mandate of the reviewing court is binding on the lower court, and must be strictly followed, without variation and departure from the mandate of the appellate court." *Bodie v. Bodie*, 239 N.C. App. 281, 284, 768 S.E.2d 879, 881 (2015) [(citation and quotation marks omitted)].

4. It is further established that when the Court of Appeals is silent on a particular matter, the Court of Appeals leaves that decision in the trial court's sound discretion. *See In re S.M.M.*, 374 N.C. 911, 914, 845 S.E.2d 8, 11-12 (2020). If the Court of Appeals vests discretion through silence, a trial court has the authority to conduct a hearing and take evidence on events and factual changes that have occurred since entry of the original, reversed order. *See* [*Crews II*], 261 N.C. App. 557, 561, 821 S.E.2d 469, 472 (2018) . . . . However, "if no additional evidence is presented on remand, the trial court can make its findings of fact and conclusions of law only based on the [*existing record*]." [*Id.*]

5. While the decision to receive additional evidence on remand is ordinarily left within the discretion of the trial court, the trial court may only exercise discretion to accept or refuse additional evidence "so long as the reviewing court's mandate does not specify otherwise." *In re R.L.O.*, 375 N.C. 655, 658, 850 S.E.2d 283, 287 (2020) [(citation omitted)].

6. Good cause does not exist to enter a Protective Order pursuant to Rule 26(c) of the North Carolina Rules of Civil Procedure.

(Emphasis added and brackets omitted.)

Father contends that the trial court did not follow this Court's mandate in *Kincheloe I.* "It is well established that the mandate of an appellate court is binding upon the trial court and must be strictly followed without variation or departure. No judgment other than that directed or permitted by the appellate court may be entered." *In re S.M.M.*, 374 N.C. 911, 914, 845 S.E.2d 8, 11 (2020) (citation, quotation marks, and brackets omitted). Father notes that this Court mandated a new trial in *Crews II* but did not mandate a new trial in *Kincheloe I.* He argues that "[t]he

- 13 -

mandate [in this case] would have allowed the trial court to make a ruling based on the existing record. This indicates that additional evidence of circumstances after 14 September 2018 was not anticipated by the panel of the Court when the case was remanded." He is partially correct. A new hearing was not mandated—although it was required if either party requested to present additional evidence. But he overlooks the reason this Court mandated a new trial in *Crews II* and the scope of discretion granted to the trial court in *Kincheloe I*. Here, the trial court's conclusions in both orders demonstrate that it understood our mandate and complied.

*Kincheloe I* did mandate a new evidentiary hearing on remand because Mother requested a hearing after remand; that option was part of the mandate. Father's argument is misguided as to what this Court may have "anticipated" upon remand. This Court can never anticipate what the circumstances at the time of remand will be. Many important circumstances may change while a case is on appeal; a party may lose their job, become totally disabled by an accident or illness, or a myriad of other unpredictable events may arise. Or circumstances may be essentially the same. The parties may agree to stipulate to facts on matters such as current incomes and expenses to avoid the time and cost of another hearing. The trial court is normally in a better position to determine how to proceed, so we generally leave the decision of whether to receive additional evidence to the trial court's discretion. Because this decision is in the trial court's discretion, the court may decide to receive additional evidence or not. *See Crews II*, 261 N.C. App. at 561, 821 S.E.2d at 472; *In re R.L.O.*,

375 N.C. 655, 658, 850 S.E.2d 283, 287 (2020) ("Whether or not to receive additional evidence on remand is a determination within the trial court's discretion so long as the reviewing court's mandate does not specify otherwise." (citation omitted)); *Holland v. Holland*, 169 N.C. App. 564, 572, 610 S.E.2d 231, 237 (2005) (same). But the need for additional evidence on remand will also depend on the reason for the remand and the facts and issues the trial court must address in its new order. *Crews II* presents a good illustration of the error the trial court here did *not* make.

In *Crews v. Paysour*, No. COA16-604, 252 N.C. App. 426 (2017) (unpublished) ("*Crews I*"), this Court had vacated the trial court's child support order and remanded without limiting the trial court's discretion on remand. Specifically, we stated that

> [o]n remand, the trial court is free to decide, in its discretion, whether additional evidence or a hearing is necessary, or whether the case may be decided based on the existing record.
>
> . . . .
>
> For the reasons discussed above, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

*Crews I*, slip op. at 3 (citation omitted). The first hearing to establish child support had been held on 30 September 2014. *See id.*, slip op. at 1. We noted in *Crews II* that the first hearing was "unusual, particularly for a non-guideline child support case, because . . . the parties presented little evidence regarding their living expenses, minimal evidence regarding the child's needs and expenses, and they were only

allotted thirty minutes each." 261 N.C. App. at 562-63, 821 S.E.2d at 473. Based on the trial court's misapprehension of the law at the first hearing, it had apparently "limit[ed] the evidence presented at the hearing." *Id.* at 563, 821 S.E.2d at 473. The case had begun as a guideline child support case in 2012 when both parents had much lower incomes, but by 2014, the parties were both practicing physicians with joint incomes placing them above the child support guidelines. *See id.* The first child support order, based on the 2014 hearing, was entered over a year after the hearing in December 2015. The order on remand was entered three years after the hearing. We noted that

> much of the difficulty in this child support order was caused by the delay in entry of an order, and certainly the passage of more time for appeals has only made matters worse. The child support hearing was held on 30 September 2014; this was the only evidentiary hearing. On 22 October 2015, a hearing was held to address the fact that it was thirteen months after the hearing and no order had been entered. The first order was entered 7 December 2015, over a year after the hearing. The order on remand was entered almost three years after the hearing. At the time of this opinion, over four years have passed since the hearing.
>
> . . . .
>
> [T]he trial court did not receive any evidence on remand, but despite the lack of evidence, entered findings of fact regarding child support payments. [The m]other challenges these findings of fact as unsupported by the evidence, and since the only evidentiary hearing was in September 2014, any findings about any events after September 2014 are obviously unsupported by the record.

*Id.* at 560, 821 S.E.2d at 471.

Here, Father seems to make a similar argument as presented by the father in *Crews II*. In *Crews II*, the father argued "that *Crews I* left it in the trial court's discretion as to whether to receive additional evidence on remand, so the trial court properly made findings addressing the time period after the evidentiary hearing." *Id.* at 561, 821 S.E.2d at 472. This Court rejected the argument reasoning that "when this Court leaves the matter of receiving additional evidence to the discretion of the trial court, this does not mean that the trial court can make findings of fact regarding something not addressed by the evidence at the hearing." *Id.* Because there was no evidence to support the trial court's findings as to facts after the September 2014 hearing, we vacated the order, and in the second remand, we mandated a new trial to ensure there was no further confusion. *Id.* at 568, 821 S.E.2d at 476.

We mandated a new trial in *Crews II* because it would be impossible for the trial court to establish child support in accord with Section 50-13.6 without receiving evidence from September 2014 to the date of hearing on remand about changes to incomes and expenses. "It is well established that child support obligations are ordinarily determined by a party's actual income *at the time the order is made or modified*." *Hartsell v. Hartsell*, 189 N.C. App. 65, 77, 657 S.E.2d 724, 731 (2008) (emphasis added) (citation and quotation marks omitted). Or, as we noted in *Crews II*,

in any case, . . . if no additional evidence is presented on

remand, the trial court can make its findings of fact and conclusions of law only based upon the existing record. The order on remand can address only the facts as of the last date of the evidentiary hearing because that is the only evidence in the record. Evidence is always required to support findings of fact, unless the parties have stipulated to the fact or the finding is subject to judicial notice, neither of which is present here.

261 N.C. App. at 562, 821 S.E.2d at 472-73 (footnote omitted). Thus, even if Mother had not requested to present additional evidence, the trial court here would still have the discretion under *Crews II* to determine that additional evidence would be required. Again, the trial court could not have made any findings about the parties' incomes or expenses or the children's needs after September 2018 without receiving new evidence on these facts.

In *Kincheloe I*, we reversed and remanded the trial court's 2019 Child Support Order

for entry of a new order which complies with North Carolina General Statute [Section] 50-13.4. If either party requests additional hearing after remand, the trial court *shall* receive additional evidence prior to entry of a new order. If neither party requests additional hearing, the trial court *may* enter a new order based solely upon the existing record.

278 N.C. App. at 77, 862 S.E.2d at 39 (emphasis added). The mandate did not limit the trial court's consideration of evidence to the existing record but left the matter to the trial court's discretion, with the limitation that *if* either party requested "additional hearing after remand, the trial court" was required to "receive additional

evidence prior to entry of a new order." *Id.* As a general rule, the word "may" is permissive, and the word "shall" is mandatory. *See Silver v. Halifax Cnty. Bd. of Commissioners*, 371 N.C. 855, 863-64, 821 S.E.2d 755, 761 (2018) ("As used in statutes, the word 'shall' is generally imperative or mandatory. In contrast, 'may' is generally intended to convey that the power granted can be exercised in the actor's discretion, but the actor need not exercise that discretion at all." (citation, quotation marks, and footnote omitted)).

The words "may" and "shall" in the mandate in *Kincheloe I* defined the scope of the trial court's discretion on remand. The only limitation on that discretion was that if either party requested an additional hearing, the trial court had to allow an additional hearing to the extent necessary under the circumstances existing at the time. *See Kincheloe I*, 278 N.C. App. at 77, 862 S.E.2d at 39.

The trial court is in the best position to consider the existing circumstances of the parties after remand, which may include other pending matters, and to make the best use of the trial court's limited resources in a way that will address that particular case. And in child custody and child support cases, the trial court must consider the circumstances of the children and parties, as well as the parties' needs and ability to provide child support "at the time the order is made or modified" and often, as a practical matter, during the time between the filing of the motion to modify child support and the final date of the hearing on the motion to modify child support. *See Hartsell*, 189 N.C. App. at 77, 657 S.E.2d at 731.

Here, following remand, in the trial court's 8 March 2022 Order Denying Motion to Dismiss, the court concluded that it "ha[d] the authority to conduct a hearing and take evidence on events and factual changes that ha[d] occurred since entry of the original, reversed [2019 Child Support Order]" in considering the new child support order. In the 2023 Child Support Order, the court correctly concluded that after four years of litigation on the 2017 motion to modify, it was obligated "to take evidence during the hearing on remand to determine the current reasonable needs of the minor children for maintenance and support and the relative ability of the parties to provide support and to enter an order that addresses the current circumstances."

### 2. *Trial Court's Compliance with Rule 63*

Father also argues that during the hearing conducted following remand in 2022, the trial court erred by not admitting those transcripts and exhibits admitted during the hearing on the 2017 motion to modify, which was held in 2018. We disagree.

"In all actions tried upon the facts without a jury . . . , the court shall find the facts specially and state separately its conclusions of law thereon[.]" N.C. Gen. Stat. § 1A-1, Rule 52(a) (2023). However, where the judge

> before whom an action has been tried or a hearing has been held is unable to perform the duties . . . , then those duties, including entry of judgment, may be performed:
>
> . . . .

(2) In actions in the district court, by the chief judge
of the district, or if the chief judge is disabled, by any
judge of the district court designated by the Director
of the Administrative Office of the Courts.

If the substituted judge is satisfied that he or she cannot
perform those duties because the judge did not preside at
the trial or hearing or for any other reason, the judge may,
in the judge's discretion, grant a new trial or hearing.

N.C. Gen. Stat. § 1A-1, Rule 63 (2023). The "application of Rule 63 gives the

'substituted judge' discretion in determining how to proceed." *Lange v. Lange*, 357

N.C. 645, 648, 588 S.E.2d 877, 879 (2003).

Following the remand of the 2019 Child Support Order, Judge Blake recused

from further hearings on the matter on 29 September 2021. Judge Trosch, then

serving as District Court Chief Judge, presided over the hearing beginning on 13 July

2022 for the rehearing of Mother's 2017 motion to modify child custody and support

and the 2021 amended and supplemental motion to modify child support and motion

for attorney's fees. The record reflects that Father proffered the trial transcripts and

exhibits from the hearing conducted on the 2017 motion before Judge Blake on 26

June and 14 September 2018.

In the 2023 Child Support Order, Judge Trosch made the following conclusions:

3. The undersigned cannot make findings of fact,
conclusions of law or declare a judgment based upon
evidence presented at a trial over which she did not
preside. Therefore, the undesigned cannot effectuate the
directive of the Court of Appeals to enter more adequate
findings of fact based upon the evidence presented at the
2018 trial.

- 21 -

. . . .

> 4. During the evidentiary hearings over which the undersigned presided, the parties had the opportunity to present all relevant evidence necessary to establish the 2018 permanent child support obligation. This [c]ourt enters order [sic] of permanent support effective [1 June 2017] after hearing testimony of witnesses, receiving evidence and judging the credibility of the witnesses.

Acting within the discretion afforded by Rule 63, Judge Trosch—serving as a substitute judge—was within her authority to deny the proffer of transcripts and exhibits from the 26 June and 14 September 2018 hearings before Judge Blake and to rehear the evidence to make findings of fact and conclusions of law. *Id.*; *see also* N.C. Gen. Stat. § 1A-1, Rule 63.

If Judge Blake had not recused, the scope of the evidentiary hearing on remand would properly have been limited to evidence addressing facts after the first hearing. Judge Blake could have then considered both the evidence from the first hearing and from the evidentiary hearing after remand to enter the new order. But here, Judge Blake was unable to hold the hearing on remand or enter a new order as our mandate would normally require. Recusal, retirement, or death of a trial judge are circumstances this Court cannot anticipate when a case is remanded for entry of a new order. Chief Judge Trosch acted within her discretion under Rule 63 by excluding the transcripts from the September 2018 hearing and holding a new hearing.

**B.      Treatment of the 2021 Motion to Modify Child Support**

Father argues that in the 2023 Child Support Order, the trial court erred by ordering him to pay a monthly child support amount beginning in 2017 and a different child support beginning in 2022 under conclusions of law 5, 8, 9, 10, and 11, without identifying a substantial change in circumstances to support the 2022 change. Father contends that the trial court deprived the parties of notice and the opportunity to be heard on whether a substantial change in circumstances had occurred. We disagree.

Child support payments ordered by a court must

> be in such amount as to meet the reasonable needs of the child . . . having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

N.C. Gen. Stat. § 50-13.4(c) (2023). An order for child support may be modified at any time "upon [a] motion in the cause and a showing of changed circumstances." N.C. Gen. Stat. § 50-13.7(a) (2023). Upon the filing of the motion, "[t]he trial court . . . has the authority to enter a modification of court ordered child support, retroactive to the filing of the petition of modification." *Chused v. Chused*, 131 N.C. App. 668, 672, 508 S.E.2d 559, 562 (1998) (citation omitted).

For child support orders that are at least three years old, changed circumstances may also be evidenced by "proof of a disparity of fifteen (15) percent or more between the amount of support payable under the original order and the amount owed under North Carolina's Child Support Guidelines based upon the

parties' current income and expenses." *Meehan v. Lawrence*, 166 N.C. App. 369, 380-81, 602 S.E.2d 21, 28-29 (2004) (citations and quotation marks omitted).

The parties entered into a 2013 Consent Order obligating Father to pay Mother $820.00 per month for child support beginning 1 December 2013. Mother filed the motion to modify child support in May 2017. The last date of the evidentiary hearing conducted on Mother's motion was 30 August 2022. In its 2023 Child Support Order, the trial court calculated Father's child support obligation to Mother to be $1,902.40 per month beginning in June 2017 through August 2022. The court made the unchallenged finding that Father's modified child support obligation beginning in 2017 was "greater than a 15% change from the obligation established by the 2013 Consent Order after the passage of four years," qualifying as a substantial change of circumstances supporting a modification of the child support agreed to in the 2013 Consent Order. *See id.*

The trial court found that in 2022, Mother started a new job and increased her earnings by over two times what she was credited with earning in 2018 (the year of gross income used to determine child support effective in 2017). The parties' combined gross annual income in 2018 was $331,301.10. In 2022, the trial court found their combined gross income increased to $432,878.33 (the year of gross income used to determine child support effective in 2022). The children's financial needs were also found to have gone up from $6,544.03 in 2018 to $9,881.86 in 2022. The

court determined that effective 1 September 2022, Father's child support obligation payable to Mother increased to $2,062.66 per month.

Based on its findings of fact, the trial court made these conclusions of law:

> 5. The amount of support set forth herein to be paid effective [1 June 2017] was adequate to meet the reasonable needs of the minor children at that time and was within Father's ability to pay.
>
> . . . .
>
> 8. Both partes owe a duty of child support to be paid for the maintenance of the minor children. There had been a substantial change of circumstances since the entry of the 2013 Consent Order for child support until the filing of the [23 May 2017] [m]otion to [m]odify [c]hild [s]upport.
>
> 9. An order establishing permanent child support effective the date of the last hearing after remand from the Court of Appeals is necessary and appropriate to ensure that the current reasonable needs of the minor child for support and maintenance are met by the parties without the burden and expense of additional motions, hearings and delay.
>
> 10. It is in the best interests of the minor children that permanent child support be paid as outlined in this Order.
>
> 11. After considering the evidence, the amount of child support ordered effective [1 September 2022] is adequate to meet the current reasonable needs of the minor children and is within Father's ability to pay.

The trial court also addressed Mother's amended motion to modify in the conclusions of law, noting that there was no final order of permanent child support (other than the 2013 Consent Order) to modify on 2 September 2021. It also explained that the motion was moot because the court was obligated to take evidence of the

children's current reasonable needs and the parties' current circumstances and their relative abilities to pay (citing to *Crews II*, 261 N.C. App. 557, 821 S.E.2d 469).

We hold that the trial court was within its authority to modify the 2013 child support obligation effective June 2017 through August 2022. In fact, the trial court was obligated to establish a modified child support obligation for this entire time period. Even if Mother had not filed her amended and supplemental motion to modify child support in 2021, the trial court would have had to consider the proper child support to be awarded based on the 2017 motion to modify and to enter an order addressing the entire period from 2017 to the order's entry date. As the trial court noted, there was only one existing order to modify, the 2013 Child Support Order. The trial court did not directly address Mother's 2021 motion to modify in the order modifying child support except to find that the motion was "moot" and to dismiss the motion in the final decree.

Father's argument that the trial court was required to make findings of a substantial change in circumstances to justify modification of the child support order, for both the 2017 and 2021 motions, has no legal basis. There was only one modification of the 2013 Child Support Order, despite this case's convoluted procedural history. Father had full "notice and opportunity to be heard" as to the circumstances affecting child support over the entire time period from 2017 to the date of the hearings in 2022. The trial court had already denied Father's motion to dismiss and for protective order before the child support hearing on remand. Father

was well aware that the evidence to be considered at the hearing would include the entire period from 2017 to 2022. The trial court made more than sufficient findings and conclusions regarding the substantial changes in circumstances justifying the modification of the 2013 Child Support Order. The next relevant point in time is the date of entry of the order, since the new child support obligation is effective as of that date. If future modifications are needed, the baseline has been established by the 2023 Child Support Order. Father's argument is overruled.

**C.    Findings of Fact in the 2023 Child Support Order**

Father challenges several findings of fact throughout the 2023 Child Support Order as unsupported by competent evidence. We have grouped the challenges into the following categories: (1) Mother's gross income and expenses; (2) Father's gross income in 2018 and 2022; (3) the children's monthly financial needs in 2022; (4) arrearages; and (5) the children's agreed upon extra-curricular activities in 2022.

### *1. Mother's Gross Income and Expenses*

Father argues that the 2023 Child Support Order's findings of fact 22, 24, and 25, addressing Mother's gross income in 2017 and 2018, are not supported by competent evidence. Father contends that the trial court erred by crediting Mother with $1,400.00 toward her 2018 *annual* income due to cost-free living rather than crediting $1,400.00 *per month* (yielding $16,800.00 toward annual income). Father contends that findings of fact 33, 36, 43, 44, 45, 46, 49, and 79 rely on the determination of Mother's 2018 annual income and consequently, are incorrect.

Father also argues that findings of fact 38, 41, and 42, addressing Mother's expenses, are not supported by competent evidence. Father contends that because findings 41 and 42 are erroneous, parts of findings 43, 44, 45, 46, 49, and 79, which rely on findings 41 and 42, are also erroneous.

"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474-75, 586 S.E.2d 250, 253-54 (2003) (citation omitted). "[U]nchallenged findings of fact are binding on appeal." *Kleoudis v. Kleoudis*, 271 N.C. App. 35, 39, 843 S.E.2d 277, 281 (2020) (citation, quotation marks, and brackets omitted).

*a. Findings of Fact 22, 24, and 25*

In unchallenged findings of fact, the trial court found that Mother lived with her mother rent free from 2016 until 2019 when she "entered into a lease agreement with her mother to pay rent in the amount of $1,400.00 per month." The trial court also found Mother was "unable to pay this amount at that time[,]" but compensated her mother for the unpaid rent through paying her cell phone bill, purchasing groceries, and doing household chores. The trial court determined that "the unpaid rent conferred a benefit upon Mother and should be treated as income."

In child support cases where the parties' combined income exceeds incomes addressed by the North Carolina Child Support Guidelines, a trial court "must enter

written findings of fact showing . . . the relative ability of each party to provide support." *Kincheloe I*, 278 N.C. App. at 72, 862 S.E.2d at 36 (citation and quotation marks omitted). Our Child Support Guidelines define "income" as "a parent's actual gross income from any source, including . . . maintenance received from persons other than the parties in the instant action." N.C. Child Support Guidelines, AOC-A-162, at 3 (2023). "Maintenance" has been defined, in part, as "[f]inancial support given by one person to another." *Maintenance*, Black's Law Dictionary (12th ed. 2024). In *Spicer v. Spicer*, this Court explained that "cost-free housing is a form of financial support that may be considered" in determining a child support obligations. 168 N.C. App. 283, 288, 607 S.E.2d 678, 682 (2005) (citing *Guilford County ex rel. Easter v. Easter*, 344 N.C. 166, 473 S.E.2d 6 (1996); *Gibson v. Gibson*, 24 N.C. App. 520, 211 S.E.2d 522 (1975))).

Even before the Child Support Guidelines were adopted, our courts recognized that cost-free housing or other in-kind support from a third party may be considered as part of a party's income for purposes of a child support obligation. For example, in *Gibson v. Gibson*, 24 N.C. App. 520, 523, 211 S.E.2d 522, 524 (1975), this Court noted that the defendant's employer provided him an automobile and a "rent-free apartment," and these benefits reduced his living expenses, giving him the ability to comply with the child support and alimony order. It is well established that the value of in-kind benefits, such as cost-free housing, may be treated as income under the Child Support Guidelines, and the same is true for a case such as this one, where the

amount of the parties' combined incomes exceeds the Guidelines. Here, the trial court included Mother's in-kind support from living with her mother but not paying rent. Father contends the trial court did not include the correct amount of in-kind support.

Challenging finding of fact 22, Father contests the trial court's determination that Mother's total gross income in 2017, "including her gross income from employment and imputed income for the value of rent, was $49,938.00." However, the court determined that Mother's "2018 income should be used for purposes of establishing a child support amount[,]" not her 2017 income. Father does not argue how finding 22 influences another finding of fact, a conclusion of law, or the court's decree, and we see no effect. We do not further address this challenge.

It is unchallenged under finding of fact 23 that Mother's "total gross income from employment" in 2018 was $49,057.94. In finding 24, Father challenges the determination that "Mother received the benefit of unpaid rent in the amount of $1,400.00 in 2018[,]" and under finding 25, that "Mother's total income for the year 2018, including her gross income from employment and imputed income, was $50,457.94 [($49,057.94 + $1,400.00)]." Mother's rent was $1,400.00 per month; annualized, this amounts to $16,800.00 per year. Father proposes that Mother's cost-free living conferred a $16,800.00 benefit in 2018, though the trial court accounted for only $1,400.00 for the entire year.

The trial court found that Mother was not able to pay her mother $1,400.00 a month in rent, but Mother "paid her mother's cell phone bill, purchased groceries,

and did household chores" to contribute with the resources that she had, instead of paying in cash. Based on the trial court's finding regarding Mother's other contributions to her mother's household, we are not convinced that the trial court made a mathematical error or failed to consider the additional months of cost-free housing. The court credited Mother with receiving the benefit of one month's cost-free housing ($1,400.00) in 2018, in its discretion, essentially finding that Mother's contributions to her mother's household, by paying bills and working to maintain the home, "paid" for the remaining months.

In *Knutton v. Cofield*, our Supreme Court explained that

> [w]hen trial by jury is waived and issues of fact are tried by the court, . . . [t]he trial judge becomes both judge and juror, and it is his duty to consider and weigh all the competent evidence before him. He passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, he determines which inferences shall be drawn and which shall be rejected.

273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968) (citations omitted). "The amount of each party's contribution to child support is generally determined by the judge on a case-by-case basis. The judge must evaluate the circumstances of each family[.]" *Plott v. Plott*, 313 N.C. 63, 68, 326 S.E.2d 863, 867 (1985) (citation omitted).

We hold that the trial court's determination that Mother received a cost-free living benefit of $1,400.00 in 2018 and that her total gross income for the year amounted to $50,457.94 was supported by the evidence and within its discretion as

fact finder. Accordingly, findings 24 and 25 are upheld as supported by the evidence.

Father's challenges to findings 33, 36, 43, 44, 45, 49, and 79 were based on the proposition that the findings of Mother's 2018 annual income were in error. Because we uphold the court's findings of Mother's 2018 income under findings 24 and 25, we need not address his ancillary challenges.

*b. Findings of Fact 38, 41, and 42*

In challenged finding of fact 38, the trial court found that "Mother has shared family expenses that benefit both her and the minor children. These expenses are proportioned fifty percent to Mother and fifty percent to the minor children." Father contends that Mother's household expenses should have been allocated among Mother, the children, and Mother's mother, because they lived together, such that the children were allocated one-third of the expenses total. Father provides no authority or argument, nor are we able to find one of our own, compelling the trial court to find a three-way split in Mother's shared family expenses. Father's challenge to finding of fact 38 is overruled.

In challenged findings of fact 41 and 42, the trial court set forth an itemized list of each party's reasonable and necessary monthly expenses, as well as the children's individual expenses for 2018. The trial court listed itemized household expenses attributed to Mother and the children (rent, electricity, heat, cable TV, telephone, etc.). The court found that Mother's monthly "[h]ouse payment/rent" was $1,400.00. Father contends that the finding of Mother's rent expense lacks support

because there was no evidence that Mother ever paid rent or that she paid other expenses such as utilities for which she was given credit. This argument mirrors Father's argument above regarding finding of fact 24.

Mother filed a financial affidavit with the trial court reflecting a $1,400.00 monthly rent expense as a shared family expense. Mother testified that she entered into a lease agreement to pay her mother $1,400.00 per month for rent. Though she "did not make enough money" to pay the rent in cash, she met her obligation to the household by paying other bills and performing chores. The record supports the court's finding that Mother's $1,400.00 rent expense was incurred each month. Father's challenges to findings of fact 41 and 42 are overruled.

Because Father's challenges to findings of fact 43, 44, 45, 46, 49, and 79 only depend on findings of fact 38, 41, and 42 being held erroneous, we need not address the remaining challenges.

### 2. Findings Regarding Father's Income

*a. Findings of Fact 28, 31, and 47*

Father challenges the 2023 Child Support Order's findings of fact 28, 31, and 47 (regarding his 2018 gross income) as not supported by competent evidence.

Father contests finding of fact 28 that he "failed to report his bonus income [on his 2018 financial affidavit]. Additionally, Father artificially reduced his net income by including $1,523.00 per month in [company] stock purchases." Father tries to undermine the court's finding that it "does not find Father's statements concerning

his income to be credible."

On his 2018 financial affidavit filed with the trial court on 14 June 2018, Father provided an average monthly gross income attributable to wages or salary. Under the "[b]onuses" category, Father wrote, "TBD [('to be determined').]" Father points out the court found in unchallenged finding of fact 27 that "[s]ince at least 2013, Father's income from his employment has included a base annual salary and a discretionary performance bonus. The bonus amount has varied from year to year." Father contends "[b]y stating TBD, [he] left the trial court as the decider of the amount." Similarly, as to the trial court's finding that "Father failed to report his bonus" in 2018, he argues that "[a]s with the 2018 [f]inancial [a]ffidavit, [he] referenced his bonus by stating '[v]aries.'" This is not "fail[ing] to report the bonus." In other words, Father argues his refusal or failure to include *specific numbers* on his financial affidavit should not be held against him and should not impair his credibility. Mother correctly points out that Father's argument concedes not reporting a number on his financial affidavit, even though he knew the bonus amounts in 2017 and 2018.

Despite his choice not to state a number for his bonus income, Father still reported a deduction for his stock purchases. Judge Trosch appropriately noted this incredible discrepancy, and the trial court's discretionary credibility determinations in findings of fact 28 and 31 are supported by competent evidence. Mother is correct, and it is not difficult to understand why the trial court found Father not to be credible

in his claims regarding his income.

Father is correct that the trial court is ultimately "the decider of the amount" of his income based on the evidence, but Father overlooks his own obligation to fully and honestly provide his income information in response to Mother's discovery requests and by completing his financial affidavits as required by the local rules. *See* Local Rules of Domestic Court, Jud. Dist. 26, Family Court Division, Rule 8 (2017). Father's failure to provide his bonus income information did not assist the trial court in being "the decider of the amount" of his income but instead made the trial court's job of making accurate findings regarding his income more difficult. The trial court determined Father's failure to provide this information in a clear and forthright manner impaired his credibility, and it was within the trial court's discretion to so determine.

Father makes various arguments about his stock purchases, bonus paystubs, and other matters, but overall, the trial court's findings were based on competent evidence. Father simply has a different view of the evidence and objects to the trial court's determination regarding his lack of credibility.

Under challenged finding of fact 31, Father does not raise a specific argument but predicates his challenge on the integrity of finding of fact 28. Under finding 31, the court found that

> [b]ecause the net income information provided by [F]ather is not reliable or complete, the court finds that the most appropriate way to determine Father's income for the

purposes of determining child support in 2018 is to arrive at the average of his salary and bonus earnings from 2017 to 2018. Father's gross [annual] income for purposes of setting a child support amount in 2018 is, therefore, $280,843.16.

Under finding of fact 47, Father contests the trial court's finding that it "cannot determine Father's net monthly income because Father failed to provide evidence from which the court could make this determination."

Our Child Support Guidelines state that "[w]hen income is received on an irregular, non-recurring, or one-time basis, the court may average or prorate the income over a specified period of time" to determine gross income. N.C. Child Support Guidelines, AOC-A-162, at 3 (2023). The salary and bonus amounts the trial court attributed to Father for years 2017 and 2018, as set forth under findings of fact 29 and 30, are unchallenged and binding on appeal. *See Kleoudis*, 271 N.C. App. at 39, 843 S.E.2d at 281. Under unchallenged finding of fact 32, the average of these figures "is rationally related to and not a considerable departure from the amount of income that Father self-reports and that [the] records concerning his compensation in 2018 show."

The trial court's determination of Father's 2018 gross income is supported by the evidence. Therefore, we reject Father's challenge to the methodology and amount recited under finding of fact 31. To the extent Father contests the court's findings that his financial statements are not credible, reliable, or complete, we note that under finding of fact 48, it was unchallenged that "Father did not provide any tax

returns or any other evidence to th[e] [trial] court to demonstrate his actual tax liability on his variable bonus income. Father provided [p]ayroll [j]ournals for [b]onus income with incomplete federal and state tax withholdings for years 2017 through 2021." The determination of credibility is the purview of the trial court. *See Crenshaw v. Crenshaw*, 296 N.C. App. 1, 15-16, 907 S.E.2d 743, 752 (2024) ("The trial court, as the fact finder, is the sole judge of the credibility and weight to be given to the evidence, and it is not the role of the appellate court to substitute its judgment for that of the trial court." (quoting *In re H.B.*, 384 N.C. 484, 492-93, 886 S.E.2d 106, 112-13 (2023))). The record provides sufficient support for the trial court's findings and Father's challenges to findings of fact 28, 31, and 47 are overruled.

### b. *Findings of Fact 56 and 57*

Father challenges the 2023 Child Support Order's findings of fact 56, 57, 59, and 60 (regarding his income considered for child support obligations effective 1 September 2022) as not supported by competent evidence. He contends that findings of fact 62, 65, 73, 74, 76, and 78 are consequently in error.

Under finding of fact 56, the trial court found that Father "failed to report his bonus" on his financial affidavit filed in July 2022 and under finding of fact 57, "Father did not produce evidence of his salary and earnings from employment in 2022. . . . [T]he gross income information provided by [F]ather is not reliable or complete[.]" Although Father produced some evidence of his income for 2022, those documents support the finding that the information he provided "was not reliable or

complete." As noted above, Father's financial affidavit did not list any bonus income even though Father has had bonus income every year during his twenty-three years of employment. He produced only paystubs from 19 May through 16 June 2022. But one month's information is not complete evidence of income from 2022. This finding is supported by the evidence. "If the record discloses sufficient evidence to support the findings, it is not this Court's task to determine *de novo* the weight and credibility to be given the evidence contained in the record on appeal." *Plott*, 313 N.C. at 69, 326 S.E.2d at 867 (citation omitted).

### c. *Finding of Fact 59*

Under finding of fact 59, the trial court found that in "2020, Father's bonus income was $191,688.66" and "[i]n 2021, Father's bonus income was $283,495.60." Father does not challenge the finding that his bonus income in 2019 was $144,214.74. Father contends that his pay stubs reflect the actual bonus paid to him in 2020 as $140,204.85, and $164,850.93 in 2021. In his brief submitted to this Court, Father states that "[t]he numbers used by the trial court are based on summaries from Father's employer which lists those amounts as [d]iscretionary [b]onus [i]ncome" in 2020 and 2021.

As Father acknowledges, the record provides competent evidence from his employer to support the challenged finding of fact. Thus, we overrule Father's challenge and uphold finding of fact 59. *See Plott*, 313 N.C. at 69, 326 S.E.2d at 867.

### d. *Finding of Fact 60*

Under finding of fact 60, the trial court determined Father's "gross annual income for purposes of setting a child support amount in 2022 is $326,066.33." Father challenges this amount as in error by $56,709.49, contending that the trial court used an inaccurate source for finding his gross income based on finding of fact 59. In his brief submitted to this Court, Father acknowledges that "[t]he numbers used by the trial court are based on summaries from Father's employer which list those amounts as [d]iscretionary [b]onus [i]ncome." Before the trial court, Father testified to his belief that the discrepancy between what was listed on the employer's summaries and his actual paystubs may have been stock purchases he made. Father argues that "[t]he best evidence of [his] income is [his] actual paystubs that show his bonus amounts and year-to-date income."

Father's own argument illustrates that there was competent evidence to support the trial court's findings. Due to Father's own refusal to provide complete and accurate income information and his affidavits stating that his bonus income is "TBD" or "[v]aries[,]" the trial court determined the most credible evidence available was the summaries from Father's own employer. Father argues the trial court should have instead relied on "his actual paystubs"—although he produced only the paystubs from May 2022 to June 2022.

Per finding of fact 60, the court averaged Father's variable recurring bonus income from 2019 to 2021 (($144,214.74 + $191,688.66 + $283,495.60)/3 = $206,466.33) in contemplation of his bonus for 2022 and added his base salary from

2021 ($119,600.00) to estimate his 2022 gross annual income for calculating child support ($326,066.33). This method has been endorsed in several cases, particularly where the trial court has concerns regarding the reliability of the income information from a party, and the trial court had those concerns here. *See, e.g., Diehl v. Diehl*, 177 N.C. App. 642, 650, 630 S.E.2d 25, 30 (2006) (holding that the trial court did not abuse its discretion by averaging figures from 2001 and 2002 tax returns to determine the defendant's 2003 income after finding the defendant's 2003 income tax return was "highly unreliable" and that he "had not presented adequate information as to his 2003 income" (internal quotation marks omitted)); *see also Zurosky v. Zurosky*, 236 N.C. App. 219, 243, 763 S.E.2d 755, 769-70 (2014) (holding that the trial court's consideration of the defendant's income as reported over several years—"before [the defendant] had reason to alter the reported figure"—after "[t]he trial court did not find [the defendant]'s reported income [for the year in question] to be credible" was not an abuse of discretion). We overrule Father's challenge and uphold finding of fact 60.

### e. *Findings of Fact 62, 65, 73, 74, 76, and 78*

Father generally challenges findings of fact 62, 65, 73, 74, 76, and 78 based on the trial court's reliance on findings of fact 56, 57, 59, and 60. Because the previous findings of fact are supported by the evidence, we also uphold findings of fact 62, 65, 73, 74, 76, and 78 (addressing the parties' combined gross income in 2022, the

percentage of the each party's individual income to the combined whole, and each party's proportionate financial responsibility for the children's financial needs).

### 3. Findings Regarding Financial Needs of the Children

Father challenges the 2023 Child Support Order's findings of fact 69 and 70 (addressing the financial needs of the children) as unsupported by the evidence. Father contends that, as a result, findings of fact 72, 73, 74, 75, 77, and 78 are also without evidentiary support.

#### a. Finding of Fact 69

Under finding of fact 69, the trial court stated that it had considered factors such as the 2019 and 2023 Child Support Guidelines, each party's total income, each party's expenses, and each party's condition and accustomed standard of living "in determining the minor children's reasonable and necessary needs which are consistent with the parties' evidence of the 'actual' expenses incurred by the parties." Other than stating the finding number, Father does not raise an argument contravening finding of fact 69, and it is abandoned. *See* N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

#### b. Finding of Fact 70

Under finding of fact 70, the trial court itemized the reasonable and necessary monthly expenses attributable to each party. Of the reasonable and necessary monthly expenses specific to the children (such as uninsured medical/dental

expenses, clothing, and extracurricular activities, etc.) the trial court determined that $2,836.04 of those costs were paid by Mother and $3,087.24 were paid by Father. However, Father points out that the sum of the itemized children's expenses attributed to Mother does not equal $2,836.04 but $2,456.04 – a difference of $380.00. Father contends that this $380.00 correlates to an expense associated with uninsured therapy sessions for one of the children listed on Mother's financial affidavit. Father contends that there was no medical determination that the child needed therapy or that therapy was recommended, that no therapist had been selected, and that Mother provided no indication of the basis for the amount. If the uninsured therapy expense was a valid expense, Father contends that it should be split between the parties, but it was unclear whether the court had intended to include the expense in the list.

We note that the parties entered into a Consent Order for Psychological Evaluation of Minor Child before the trial court on 7 June 2022 in which the court ordered that one of the minor children would undergo a psychological evaluation. This order provided that "[t]he parties shall follow the treatment recommendations of the evaluation" and "share the expenses for such recommendations with [Mother] paying for forty percent (40%) or such expenses and [Father] being responsible for sixty percent (60%) of such expenses." Consistent with this consent decree, the trial court in its 2023 Child Support Order decreed that "[f]or the period from [1 June 2017] through [30 August 2022], Father shall pay 60% of . . . therapy . . . expenses for the minor children and Mother shall pay 40%" of the remaining uninsured expenses.

Beginning 1 September 2023, Father was ordered to "[p]ay 75% of . . . therapy . . . expenses for the minor children and Mother shall pay 25%." The court's determination of the children's reasonable and necessary monthly expenses is sufficient to account for the cost of uninsured therapy sessions for the child. As the children's expenses with each party were combined and factored into the determination of each party's child support obligation, it appears that the court's order awards Father the "split between the parties" for which he advocates.

Father further challenges finding of fact 70 because in the list of children's expenses, under "[a]ctivities," Mother is credited with paying $1,213.28, while Father is credited with paying $136.18. Father contends that the trial court failed to indicate why Mother was credited with paying $1,213.28 monthly while he was credited with paying $136.18. Father states that "[e]ither the $1,213.28 should be removed or Mother should be assigned 25% of the cost and Father should be assigned 75%."

On her financial affidavit filed 6 July 2022, Mother listed $1,213.28 as a monthly expense for the children's activities. Before the trial court, she testified that the children's expenses were for attending Camp Seagull, golf, and a swim club membership. Under finding of fact 85, the court found Father responsible for 60% of the costs for sending one of the children to Camp Seagull in 2022 and in an unchallenged finding, that Father "refus[ed] to agree to this expense in 2022." The record evidence reflects that the expense for sending a child to Camp Seagull in 2022 was $5,339.00. The unchallenged portion of finding of fact 85, along with the record,

supports the trial court's allocation of children's expenses to Mother. Father's challenges to findings of fact 69 and 70 are overruled.

*c. Findings of Fact 72, 73, 74, 75, 77, and 78*

Because we uphold findings of fact 69 and 70, we need not address those challenges dependent only on an unfavorable review of those findings as the basis for Father's general challenges to findings of fact 72, 73, 74, 75, 77, and 78.

### 4. Findings Regarding Arrearages

Father challenges the 2023 Child Support Order's finding of fact 81, addressing arrearages, as unsupported by the record evidence. Under finding of fact 81, the trial court found that Father paid Mother $378.46 bi-weekly from June 2017 through 1 October 2018, and Father paid $217.55 bi-weekly beginning in October 2018; "Father also made two 'bonus payments' to Mother for the years 2020 and 2021 totaling $6,101.10." Father challenges the finding he made only two bonus payments, contending he made bonus payments in 2019, 2020, and 2021 totaling $6,274.00 (a difference of $172.90). The record includes electronic money transfer records from Father to Mother, including three transfers described as bonus payments; however, no matter how the payments are identified, the unchallenged part of finding of fact 81 states that "Father paid [Mother] a total of $40,723.74." As this unchallenged amount reduces the amount Father owes Mother for arrearages, despite the payment descriptions attached to the itemized transfers, we need not further address Father's challenge to finding of fact 81.

### 5. *Findings Regarding Children's Expenses*

Father challenges the 2023 Child Support Order's findings of fact 85 and 87, addressing the children's expenses and the percentage attributable to each parent, as unsupported by the record evidence.

*a. Finding of Fact 85*

Under finding of fact 85, the trial court found that

> Father challenged his responsibility for 60% of the expense of sending [the eldest child] to Camp Seagull in 2022. [The eldest child] [ha]s participated in Camp Seagull every year since he was six years old and Father has paid his portion of this annual expense since at least 2017 without debate. Father's refusal to agree to this expense in 2022 is without reason or justification. Father is responsible for his portion of this expense.

Father argues that the expense of sending a child to Camp Seagull was not an "agreed-upon expense" because he did not agree in 2022, and it should not be included in the children's expenses to be divided between the parties. However, if the expense is deemed one allocated to both parties, he should be responsible and attributed his share. He asserts that where the trial court listed the cost of Camp Seagull as an expense of the children paid 100% by Mother and required Father to reimburse Mother 60% and then specifically ordered that he pay 60% of the children's expenses, a portion of the Camp Seagull expenses are being double counted against him. Mother responds to Father's argument contending that he

> sporadically argues certain expenses are double-counted against him because they are listed in []Mother's

> [f]inancial [a]ffidavit as expenses she pays—such that her share of the children's needs increases—while he is also required to reimburse a portion of such expenses in the future. Father thus asks this Court to either (1) ignore the existence of those actual expenses paid by []Mother because he wants a hypothetical credit for having to reimburse her for a portion of uninsured medical and extracurricular expenses in the future, or (2) reallocate to him a portion of those expenses paid by []Mother so she does not receive credit for those expenses she actually paid.

Mother's argument is an accurate characterization of Father's contentions as to the children's expenses. The trial court's extensive findings address both the past expenses and allocation for the future. For some past expenses, Mother paid in full and Father reimbursed her for some and not for others. The trial court received extensive evidence regarding the accounting for these years of expenses and which party paid or reimbursed what.

Per the 3 December 2013 Consent Order in effect, "[t]he parties shall share the costs of all agreed-upon extracurricular activities[.]" The record reflects that Father emailed Mother in February 2022 that their eldest child did not want to go to the camp that year, that Father did not have the money to send the child to camp, and that he was no longer in agreement about the extracurricular activity. Father testified that he "initially agreed for [the minor child] to go back [to the camp,]" but "rescinded that agreement prior to . . . when the final payment was done." Father stated he "d[id] not agree to this anymore."

The 2013 Consent Order required Father to pay for "agreed upon" expenses.

Father acknowledged he initially agreed to these expenses but then later changed his mind. Despite Father's claim that the child did not want to go to camp, he actually went. The trial court was within its discretion to find that Father's ultimate refusal to pay this expense was unjustified *where he had initially agreed* to pay and which he had historically paid for years before 2022 with no dispute. The trial court's finding that Father is responsible for 60% of the expense for 2022 as to that child, as stated under finding of fact 85, is supported by the evidence.

b. *Finding of Fact 87*

Under finding of fact 87, the trial court stated:

> From 2018 to 2022, Mother paid for various extracurricular activities and uninsured medical expenses totaling $17,245.26. Pursuant to a court order entered in pending custody litigation, Father is not responsible for the cost of [the youngest child's] therapy . . . on June 12, 2020.
>
> . . . .
>
> Father is responsible for 60% of expenses paid by [M]other, excluding the cost of therapy, totaling $9,885.16.

Father contends that there are two errors. First, the children's golf expenses were used to calculate Mother's expenses, where she was given credit for 100% of the cost, and now, "Father is required to reimburse Mother 75% of such costs under the order" beginning 1 September 2022. Second, the court found that "Mother paid for various extracurricular activities and uninsured medical expenses totaling $17,245.26"; however, Father asserts that "[e]ven Mother did not contend that she

paid that much."

As to the first contention, we note that all expenses supporting the $17,245.26 total were alleged to have accrued before September 2022. The trial court found that "Father is responsible for 60% of expenses paid by [M]other," accrued before August 2022, not 75%. As to the golf expenses, the hearing transcript, in conjunction with the exhibits submitted by both parties, indicate that Mother paid for the children's golf expenses—which Father did not reimburse. So we overrule Father's first argument.

As to his second assertion, Father challenges the trial court's finding that Mother paid $17,245.26 between 2018 through 2022 "for various extracurricular activities and uninsured medical expenses" as unsupported. Father claims that "[e]ven Mother did not contend that she paid that much." Mother submitted an itemized list of the expenses. The list includes a description of each activity, a date, the activity cost, which party paid for the expense, a percentage amount of the expense attributable to Father, a percentage amount of the expense attributable to Mother, and how much, if any, Father still owed Mother in reimbursement. Father points out that per Mother's list of expenses and the outstanding amounts owed, Mother only claims she is owed $5,157.84.

The trial court is the fact finder and must determine the outstanding reimbursement amount. *See generally Knutton*, 273 N.C. at 359, 160 S.E.2d at 33. Per the record, the court admitted into evidence Mother's spreadsheet presented as a

list of itemized expenses for the children incurred between 2018 and 2022, which Father had not reimbursed. Consistent with the spreadsheet, the trial court found that Mother paid $17,245.26 in expenses for the children which Father had not reimbursed. The court found that for expenses incurred between 2018 and 2022 (without therapy expenses of $770.00), Father was responsible for 60% of the total expenses incurred. The court found that Father owed Mother $9,885.16 (($17,245.26-$770.00)*60%). The record supports the trial court's finding.

We briefly address Father's assertion that Mother sought reimbursement in the amount of $5,157.84, per her spreadsheet. The items listed on the spreadsheet included the expense amounts, who paid the expense, and what amount, if any, Father still owed Mother for reimbursement. The amounts listed as those Father owed Mother for reimbursement total $5,157.84. However, those amounts mostly correlate to the portion of expense totals attributable to Mother (though she had already paid the *total* expense) rather than amounts attributable to Father. The record supports the trial court's disregard of those amounts proposed as owed by Father. *See id.* Father's argument as to finding of fact 87 being unsupported by evidence is overruled.

## D. Amount of Child Support Awarded

Father argues that the trial court abused its discretion in setting his child support obligation applicable from 2017 through 2022 and from 2022 going forward.

Father contends that the trial court erred in its determination of the children's monthly financial needs.

Father points out that the Child Support Guidelines effective in 2018 provided guidance for combined gross incomes up to $25,000.00 per month and determined the presumptive amount of reasonable financial need for two children in such households was $3,141.00 per month. Here, the trial court found that the parties' combined monthly gross income in 2018 was $27,608.42. Though the parties' combined income was only 9.5% higher than the $25,000.00 maximum for the 2018 Guidelines, the court determined that the children's monthly financial needs were $6,544.03—more than double the presumptive financial need under the Guidelines.

Similarly, the Child Support Guidelines effective in 2022 (the year of the trial court's hearing to modify child support) considered a combined monthly income of $30,000.00 and determined the reasonable financial need of two children to be $3,654.00 per month. Here, the trial court found that the parties' 2022 combined monthly gross income was $36,073.19 ($6,073.19 over the combined monthly income under the 2022 Guidelines). The children's financial needs were found to be $9,881.86 per month. Father contends that the court's determination of the children's monthly financial needs in 2018 and 2022 is an abuse of discretion.

"[I]n cases above the child support guidelines, the trial court must make a discretionary determination based upon the factors set out in North Carolina General Statute [Section] 50-13.4(c)[,]" *Bishop v. Bishop*, 275 N.C. App. 457, 463, 853 S.E.2d

815, 820 (2020), such as the needs of the children "for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child[ren] and the parties, the child care and homemaker contributions of each party, and other facts of the particular case." N.C. Gen. Stat. § 50-13.4(c) (2023). "Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Kleoudis*, 271 N.C. App. at 38, 843 S.E.2d at 281 (citation and quotation marks omitted). "Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Spicer*, 168 N.C. App. at 287, 607 S.E.2d at 682 (citation omitted).

Child support obligations set by the trial court well above the amount that might be extrapolated from the Guidelines does not mean the child support is an abuse of discretion if the findings of fact support the amount the trial court awarded. This Court has noted that the trial court should consider the financial circumstances and historical expenses in each individual case:

> Children of wealthy parents are entitled to the educational advantages of travel, private lessons in music, drama, swimming, horseback riding, and other activities in which they show interest and ability. It is possible that a child with nothing more than a house to shelter him, a coat to keep him warm and sufficient food to keep him healthy will be happier and more successful than a child who has all the advantages, but most parents strive and sacrifice to give their children advantages which cost money. Much of the

> special education and training which will be of value to
> people throughout life must be given [to] them when they
> are young, or be forever lost to them.
>
> What amount is reasonable for a child's support is to
> be determined with reference to the special circumstances
> of the particular parties. Things which might properly be
> deemed necessaries by the family of a man of large income
> would not be so regarded in the family of a man whose
> earnings were small and who had not been able to
> accumulate any savings. In determining that amount
> which is reasonable, the trial judge has a wide discretion
> with which this [C]ourt will not interfere in the absence of
> a manifest abuse.

*Loosvelt v. Brown*, 235 N.C. App. 88, 105-06, 760 S.E.2d 351, 362 (2014) (quotation

marks omitted) (quoting *Williams v. Williams*, 261 N.C. 48, 57-58, 134 S.E.2d 227,

234 (1964)).

Here, the trial court's determination of the children's monthly financial needs

in 2018 and 2022 was made by summing each party's monthly shared family expenses

(household expenses, such as rent, electricity, heat, water, etc.) attributable to the

children and the children's monthly individual expenses (uninsured medical/dental

expenses, clothing, activities, etc.). Father has challenged some of the individual

expenses which we have addressed. As we have explained, the trial court's findings

were supported by the evidence. We do not see that the manner in which the trial

court determined the children's financial needs was so arbitrary that it could not have

been the result of a reasoned decision, and Father does not contend so. *See id.*; *see*

*also Kleoudis*, 271 N.C. App. at 38, 843 S.E.2d at 281. We overrule Father's challenge

to the court's determination of the children's monthly financial needs in 2018 and 2022.

**E.      Sanctions Order**

We now address Father's arguments as to the Sanctions Order and the Order for Attorney's fees.  According to Father, the trial court's 24 August 2022 Sanctions Order violates North Carolina Rule of Civil Procedure 37 ("Failure to make discovery; sanctions"), and its 31 January 2023 Order for Attorney's Fees, which awarded Mother attorney's fees incurred related to her motion for sanctions against Father, is an abuse of discretion.

In the Sanctions Order, the trial court considered the appropriate sanctions under Rule 37 for Father's failure to respond fully to Mother's first request for production of documents.  The trial court "decline[d] to strike []Father's Financial Affidavits and decline[d] to prevent . . . Father from offering evidence of his needs and expenses and the minor children's needs and expenses."  Instead, the trial court imposed the "lesser sanction" of requiring Father to produce the discovery to Mother and to resume the trial after Mother and her counsel had an opportunity to review the discovery and prepare for the trial.  The trial court also found that Father should be required to reimburse Mother for her "reasonable attorney's fees incurred related to her [m]otion for [s]anctions," with the amount of fees to be determined at the child support trial.  Father addresses only the trial court's conclusion in the Sanctions Order that Mother was entitled to an award of attorney's fees under Rule 37.

Father argues that Rule 37(a) and 37(b) sets forth a two-step procedure for imposing sanctions. *See* N.C. Gen. Stat. § 1A-1, Rule 37(a), (b) (2023). First, the motion of a party moving to compel discovery must "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." N.C. Gen. Stat. § 1A-1, Rule 37(a)(2). Second, after a court compels discovery, sanctions may be imposed for failure to comply with the discovery order. *Id.* § 1A-1, Rule 37(b). Father contends that Mother did not file a motion seeking to compel discovery, so when the trial court imposed sanctions, it erred in doing so under Rule 37(b) without satisfying Rule 37(a).

Father argues that Mother's allegation about his failure to comply with Local Rule 8 "was the failure to provide the current principal balance and payment terms of debt." Local Rule 22 authorizes sanctions for failure to comply with other Local Rules. *See* Local Rules of Domestic Court, Jud. Dist. 26, Family Court Division, Rule 22. Father contends that Mother's motion did not support entry of the Sanctions Order.

"A trial court's award of sanctions under Rule 37 will not be overturned on appeal absent an abuse of discretion." *Graham v. Rogers*, 121 N.C. App. 460, 465, 466 S.E.2d 290, 294 (1996) (citation omitted). "[T]he circumstances of each case must be carefully weighed so that the sanction properly takes into account the severity of the party's disobedience." *Patterson v. Sweatt*, 146 N.C. App. 351, 357, 553 S.E.2d

404, 409 (2001) (citation omitted). "A party wishing to avoid sanctions for non-compliance with discovery requests has the burden of proving the non-compliance was justified." *Graham*, 121 N.C. App. at 465, 466 S.E.2d at 294 (citation omitted).

Under Rule 37(a),

> [i]f . . . a party fails to answer an interrogatory . . . or if a party . . . fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for . . . an order compelling inspection in accordance with the request.

N.C. Gen. Stat. § 1A-1, Rule 37(a)(2). Under Rule 37(b), "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order made under section (a) of this rule . . . a judge of the court in which the action is pending may make such orders in regard to the failure as are just." *Id.* § 1A-1, Rule 37(b)(2).

Under Rule 26 of the North Carolina Rules of Civil Procedure, a party from whom discovery is sought may move for a protective order but if the motion "is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery." N.C. Gen. Stat. § 1A-1, Rule 26(c) (2023). Where a motion for a protective order under Rule 26 is denied, the result may be the same as "a motion to compel discovery under Rule 37(a): an order compelling discovery. We hold that violation of an order compelling discovery that results from a motion for a protective order may be the basis for sanctions under Rule 37(b)." *Lovendahl v. Wicker*, 208 N.C. App. 193, 200, 702 S.E.2d 529, 534 (2010); *see also* N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (Commentary) ("Various rules authorize

orders for discovery . . . . Rule 37(b)(2) should provide comprehensively for enforcement of all these orders.").

As stated in the Sanctions Order, it is unchallenged that following remand from this Court in *Kincheloe I*, "Mother served []Father with [Mother]'s [f]irst [r]equest for [p]roduction of [d]ocuments seeking financial documents from []Father from 2017 (the date the initial [m]otion to [m]odify [c]hild [s]upport was filed) through the present." Father filed the "Motion for Protective Order (Rule 26(c)); Motion to Quash/Amend Subpoena," claiming to have a need for "a protective order which prevents [Mother] from seeking any financial documents after [14 September 2018]." On 8 March 2022, the court entered the Order Denying Motion to Dismiss and ruling that "[Father]'s Motion for Protective Order; Motion to Quash/Amend Subpoena . . . is DENIED" and "[w]ithin 60 days from the entry of th[e] Order, []Father shall respond to []Mother's [f]irst [r]equest for [p]roduction of [d]ocuments."

Mother filed a motion for sanctions under Rule 11 and Rule 37(b)(2) of our North Carolina Rules of Civil Procedure, as well as Rule 22 of the Local Rules of Domestic Court on 12 July 2022. She claimed that Father had "failed and refused to produce documents from the time period of [1 January 2018] through [July] 2022" and specifically, had failed to produce statements or documentation on four principal balances he acknowledged owing on a 2022 Financial Affidavit, as required by Local Rules. *See* Local Rules of Domestic Court, Jud. Dist. 26, Family Court Division, Rules 8 & 22.

In its Sanctions Order, the trial court found that following entry of the Order Denying Motion to Dismiss, Father "failed and refused to produce bank account statements and credit card statements from the time period of [1 January 2017] through in or around September/November 2021." The trial court noted that Father's claims that the requested information were "not relevant or reasonably calculated to lead to relevant evidence" were similar to those objections raised before the trial court prior to its entry of the Order Denying Motion to Dismiss. The court further noted that Father requested that Mother produce financial documents spanning 2017 to the present, and Mother timely complied.

The trial court concluded that Father had "failed to comply with Rule 37" and that Mother had been prejudiced by the failure. The trial court's Sanction Order directed Father to produce bank statements spanning 1 January 2018 through 10 September 2021, as well as credit card statements from 1 January 2018 forward. It also directed Father to reimburse Mother the reasonable amount of attorney's fees incurred related to the motion for sanctions under Rule 37 as well as Local Rules 8 and 22.

Because the trial court denied Father's motion for a discovery protective order made under Rule 26(c), ordered Father to respond to Mother's first request for production of documents within sixty days of its 8 March 2022 Order Denying Motion to Dismiss, and Father "failed and refused" to comply with said order, the trial court was authorized to sanction Father under Rule 37. *See* N.C. Gen. Stat. § 1A-1, Rule

37(b); *Lovendahl*, 208 N.C. App. at 200, 702 S.E.2d at 534. Father's argument is overruled.

Because we uphold the trial court's Sanctions Order under Rule 37(b), we need not address whether the Order is also supported by application of the Local Rules.

**F.     Order for Attorney's Fees**

We have already upheld the trial court's determination that Mother was entitled to recover attorney's fees as a sanction under Rule 37(b). Father believes that the trial court abused its discretion in establishing the amount of the attorney's fees related to Mother's motion for sanctions. Father's conclusory argument is that the fee amount was "unreasonable," but he cites no law in support of this claim. He contends that the trial court failed to make sufficient findings of fact to support its $4,459.50 attorney's fee award in favor of Mother and that the award was based on the attorney's timesheet, which "mostly contained time that was not related to the [motion for sanctions]." Father asserts that the "court failed to make findings as to how it determined that the amount of attorney's fees awarded was reasonable." Father points out that the attorney's fee affidavit had entries for billings related to a review of the requested documents and preparation for hearing: "[t]his time would have been spent no matter when the documents were provided." He contends that entries totaling three hours for drafting the Sanctions Order were unreasonable, as was a $2,800.00 entry for a half-day child support hearing. Father also contends that the assertion in the Sanctions Order that his failure to provide the documents

required an additional day of hearing was incorrect: the child support modification hearing was originally scheduled to last two days; after the sanction hearing, the second day of the modification hearing was merely postponed.

We first note that Father has challenged none of the trial court's detailed findings addressing attorney's fees as unsupported by the evidence. The trial court addressed the fee amount in findings 6, 8, 9, 10, 11, 12, 13, 14, 15, and 16:

> 6. []Father's failure to provide complete discovery responses necessitated []Mother filing and prosecuting a [m]otion for [s]anctions, drafting an Order of Sanctions, initial review of documents produced to determine whether production was complete, and an additional hearing after the July 13, 2022 hearing. As a result, []Mother incurred $4,459.50 in reasonable attorney's fees.
>
> . . . .
>
> 8. On August 30, 2022, counsel for []Mother filed an Affidavit of Hailey E. White, detailing the attorney's fees incurred by []Mother in relation to her [m]otion for [s]anctions. The [c]ourt received the Affidavit of Haley E. White into evidence at the August 30, 2022 hearing.
>
> 9. []Mother incurred reasonable attorney's fees in the amount of $4,459.50 related to her [m]otion for [s]anctions.
>
> 10. The fees incurred by []Mother in connection with her [m]otion for [s]anctions are reasonable in nature, scope, skill, time, and rate.
>
> 11. Pursuant to Rule 37 of the North Carolina Rules of Civil Procedure and Rule 8 and Rule 22 of the 26th Judicial District Local Rules for Domestic Cases, []Mother is entitled to attorney's fees related to her [m]otion for [s]anctions due to []Father's failure to provide complete discovery responses, which necessitated an additional child support hearing, and caused []Mother to incur additional

attorney's fees in the amount of $4,459.50.

12. [Mother] entered into an employment agreement with James, McElroy, and Diehl, P.A., under the terms of which she agreed to pay Ms. White and other attorneys at the firm at the regular hourly rate billed for her time by her firm, James, McElroy & Diehl, P.A., as well as to pay other attorneys and paralegals working on her case at their regular hourly rates.

13. Ms. White and her colleagues at James, McElroy and Diehl, P.A., have rendered valuable legal services to []Mother in connection with her [m]otion for [s]anctions. Those services and the time spent in providing those services are outlined in detail in the Affidavit of Haley E. White ("Ms. White's affidavit") offered and received into evidence during the hearing on the matter. The [c]ourt considered Ms. White's affidavit as to her time involvement and the involvement of her associates and paralegals, has examined this file, and is familiar with Ms. White's representation in this matter on behalf of []Mother.

14. Ms. White is an experienced domestic-relations practitioner in Mecklenburg County, who has practiced at James, McElroy & Diehl, P.A. since 2015. Ms. White has a current hourly rate of $350-$375, and in this matter, her hourly rate is $350. Ms. White's hourly rate is reasonable relative to attorneys of comparable experience and skill in the Mecklenburg County family bar.

15. Considering the applicable hourly rates and the time involved as set forth on Ms. White's affidavit, the nature and value of the services rendered, and the skill and ability called for, the [c]ourt finds that the reasonable value of the services rendered by Ms. White and her firm to []Mother in connection with her [m]otion for [s]anctions be $4,459.50. Such value is customary for like work performed by legal counsel of material similar qualifications and experience in Mecklenburg County, North Carolina.

16. Considering the circumstances of this particular case, it is reasonable and appropriate that []Father pay the sum

> of $4,459.50 to Ms. White's firm for the efforts on []Mother's
> behalf by Ms. White and her firm as set forth above.

These findings were not challenged as unsupported by the evidence and are binding on appeal. *See State on relation of City of Sanford v. Om Shree Hemakash Corp.*, 295 N.C. App. 372, 377, 905 S.E.2d 902, 906 (2024) ("Additionally, in reviewing the trial court's order imposing sanctions for discovery violations under the abuse of discretion standard, any unchallenged findings of fact are binding on appeal." (citation and quotation marks omitted)).

We review the amount of fees awarded for abuse of discretion. *See Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 724 (1980) ("When the statutory requirements have been met, the amount of attorney's fees to be awarded rests within the sound discretion of the trial judge and is reviewable on appeal only for abuse of discretion." (citation and emphasis omitted)).

Although Father argues only that the amount of fees attributed to the motion for sanctions was "unreasonable," he does not, and cannot, argue that the trial court's findings fail to address the necessary facts to support an award of attorney's fees. *See Om Shree Hemakash Corp.*, 295 N.C. App. at 377, 905 S.E.2d at 905. Nor has Father argued that the findings are not supported by the evidence. The trial court did not award Mother all the attorney's fees she claimed she was entitled to recover but made detailed findings regarding the nature of the proceedings and the time required for the matters related to the motion for sanctions, as well as Mother's counsel's

qualifications, representation in this matter, and comparable and customary rates for "like work performed by legal counsel of materially similar qualifications and experience in Mecklenburg County, North Carolina." Father has failed to demonstrate that the trial court abused its discretion in the amount of attorney's fees awarded.

### III.  Conclusion

We hold that the trial court did not violate this Court's mandate in *Kincheloe I* or abuse its discretion under Rule 63 by holding a new evidentiary hearing on remand. The trial court's findings of fact support its conclusions of law, and the trial court did not abuse its discretion in establishing Father's child support obligation. We also affirm the trial court's Sanctions Order and the Order for Attorney's Fees.

AFFIRMED.

Judges ZACHARY and COLLINS concur.